### LUBETKIN *v.* HENRY ELIAS BREWING CO.

*(Fifth District Court of New York City.   August, 1888.)*

LANDLORD AND TENANT—HOLDING OVER—RENEWAL OF LEASE.

> Defendant leased from plaintiff, for the term of one year, premises which he sublet. During the term he notified plaintiff that he would not be able to renew the lease, and plaintiff put up a sign "To Let," which he removed at the end of defendant's term, without having let the premises. After the expiration of the term the premises remained locked, the keys were never delivered to plaintiff, and the fixtures of the under-tenant, on which defendant had a mortgage, remained in the house. *Held,* that plaintiff had the right to treat the occupation by the under-tenant as a holding over by defendant from which a renewal of the lease for another year would be implied, notwithstanding the notice that he would not renew.

Action by Lubetkin against the Henry Elias Brewing Company for rent.

*M. E. Kurschedt,* for plaintiff.   *Guggenheimer & Untermeyer,* for defendant.

GOLDFOGLE, J.   In February, 1887, the plaintiff let to the defendant the store floor of the house No. 72 Mott street, for the term of one year from May 1, 1887, at the annual rent of $540, payable in equal monthly payments, in advance. The defendant sublet the premises to one O'Brien, and on February 13, 1888, wrote to the plaintiff, stating that they regretted that the store had been quite a loss to them, inasmuch as their tenant had not been able to pay any rent, and therefore could not afford to renew the lease on like terms as theretofore. The plaintiff soon thereafter put a bill upon the premises "To Let," which he removed, however, on May 1, 1888, not having let the premises in the mean time. The store remained locked, the keys were not delivered up to the plaintiff, and the fixtures of the under-tenant, upon which the defendant had a mortgage, remained upon the premises. The plaintiff, finding the premises locked, with the property of the under-tenant remaining therein, took no proceedings to dispossess his tenant, but in June, 1888, brought this action to recover rent for the months of May and June, on the alleged ground that there was an implied hiring for another term.

A careful examination of the authorities bearing upon the subject has led me to the conclusion that the plaintiff has the right to recover. The law is well settled that, where a tenant for one or more years holds over after the expiration of his term, the landlord has the option to treat him as a trespasser, or as a tenant for another year upon the terms of the prior lease, so far as applicable. The right of the landlord to elect to continue the tenancy is unaffected by the fact that the tenant refused to renew the lease, or gave notice that he did not intend to occupy the premises for another term. *Conway* v. *Starkweather*, 1 Denio, 113; *Schuyler* v. *Smith*, 51 N. Y. 309; *Dorr* v. *Barney*, 12 Hun, 259. Hence if, upon the facts found to exist in this case, the holding over can be considered that of the defendant, the notice conveyed by the defendant's letter of February 13th is unavailing as a defense. The defendant claimed that it ceased to do business with O'Brien, who was one of its customers, on April 28th, and that it was not a party to the retention of the goods upon the premises, or to the continuance of O'Brien's possession; in other words, that the defendant is not responsible for the act of O'Brien in locking the premises, or in keeping his fixtures therein. I can find no case reported in this state where the question arising in this case directly came up, but the point seems to have been presented in *Bacon* v. *Brown*, 9 Conn. 334, and the court there held that, if a tenant under a lease for a year holds over after the expiration of it, either personally or by tenants placed there by him, he is responsible to his landlord as upon a hiring for another year. Taylor, in his able treatise on Landlord and Tenant, says: "If he [the tenant] has let the whole or any part of the premises to an under-tenant, who is in possession at the termination of the lease, he must get him out; otherwise he will not be in a situation to render that complete possession to which the landlord is entitled, and, unless the entire possession is delivered up, the tenant's responsibility for rent will continue, although it may have become impossible for him to give the landlord full possession, in consequence of the obstinacy or ill-will of an under-tenant, and who refuses to quit; for in such case the landlord may refuse to accept possession, and hold the original tenant liable." Tayl. Landl. & Ten. § 524. Chief Justice McAdam, in his work on Landlord and Tenant, lays down the rule that, "if there be an under-tenant in possession, to whom the tenant has let the whole or part of the demised premises, the tenant must get the under-tenant out, or the possession of the under-tenant will be regarded as the possession of the tenant, and the latter will be liable for the consequences. In such case, the landlord may remove the under-tenant so holding over, by summary proceedings against the tenant, making the under-tenant a party, or the landlord may, at his option, treat the overholding by the under-tenant as implying a new hiring by the tenant upon the terms and conditions specified in the former lease." McAdam, Landl. & Ten. § 259. And the learned author cites *Bacon* v. *Brown*, supra, and *Harding* v. *Crethorn*, 1 Esp. 57, in support of the rule.

The application of the rule above stated may, in this instance, be a harsh one, but the rule itself is founded in reason, and, in my opinion, rests upon sound principles. It is within the power of a tenant to sublet his premises to whomsoever he pleases, but he should be held answerable for the consequences that may follow from the acts of the person he places in the possession of the property of the lessor. If the under-tenant wrongfully holds over, his immediate landlord may at once institute summary proceedings for his removal. It is possible that if such proceedings were diligently conducted, and possession yielded up in consequence to the original lessor, the latter's tenant may be absolved from the liability he would otherwise be under, although I am not prepared to say that even this would be a defense. But the tenant cannot place a third person in possession during the demised term, and then passively permit a continuance of that possession, without being

liable for the consequences of the holding over. The original landlord must look to his tenant, and has a right to insist upon full possession being yielded up to him immediately on the expiration of the term. Surely, the tenant cannot be permitted to say: "You rented the premises to me, and I sublet them or assigned my lease to such persons as I saw fit, but when my term expired I paid no further attention to the premises, and you must look to those I enabled to go into possession for the rent or the value of the use and occupation." Where the under-tenant holds over, the tenant has the same remedy against him as the original lessor has against his lessee. If the under-tenant be irresponsible, that is the misfortune of the tenant, for he ought to have known with whom he dealt when he permitted the former to enter into possession. At any rate, he undertook all the risks incident to the letting. The tenant may be an innocent party, but it was he to whom possession was intrusted; it was he who agreed to surrender the premises at the end of the term; it was he who reaped the fruit of the subletting; and he must bear its burdens. If his confidence in his tenant has been misplaced, he must suffer the results. To hold otherwise would, it seems to me, be to open the door to abuse and fraud on the part of the tenants, who, though amply responsible themselves, could evade liability for a wrongful holding over by an insolvent under-tenant or assignee not recognized or even known to the original lessor. The rule above stated is in consonance with the legal principle that, where one of two innocent persons must suffer by acts of a third, he who has enabled such third person to occasion the loss must sustain it. *Rawls* v. *Deshler,* 4 Abb. Dec. 12; *Spraights* v. *Hawley,* 39 N. Y. 441. I therefore conclude that the possession of O'Brien must be regarded as the possession of the defendant; that the latter is legally chargeable for the act of O'Brien in holding over after the term had expired, and is liable to respond to the plaintiff for the period sued for at the rate specified in the original lease. Judgment accordingly.