CELESTINA ABARCA DE SUÁREZ, Plaintiff and Appellant-Appellee, v. BANK OF NOVA SCOTIA, Defendant and Appellee-Appellant.

No. 5849. Argued December 23, 1932.—Decided June 19, 1934.

*F. Soto Gras* and *R. Díaz Collazo* for plaintiff-appellant-appellee. *J. Henri Brown, C. Ruiz Nazario,* and *G. E. González* for defendant-appellee-appellant.

Mr. Justice Córdova Dávila delivered the opinion of the court.

Enrique Abarca Sanfeliz, in his capacity as attorney in fact of Celestina Abarca Sanfeliz, brought an action of debt against the Bank of Nova Scotia. It was alleged in the complaint that Celestina Abarca Sanfeliz, widow of Gumersindo Suárez, is the owner of a house which she and her husband leased to the Bank of Nova Scotia on October 22, 1918, for a term of six years with an option to extend the same for five years more and at a monthly rent of $275 payable semi-annually in advance; that at the expiration of the original term of six years the defendant availed itself of the option to extend the same and that the extended term expired on October 22, 1929; that notwithstanding the said lease has expired, the defendant has continued in the possession and enjoyment of the house and owes on that account the monthly rent installments which became due on November 22 and December 22, 1929, at the rate of $275 monthly; that demand has been made upon the defendant for the payment of the aggregate sum of said installments, or $550; that all efforts made by the plaintiff to obtain from the defendant the payment of the sum demanded, which it owes as rent, have failed; and that the defendant has not paid the said sum of $550 due, either in whole or in part.

Based on the foregoing allegations the plaintiff prayed for a judgment in her favor and that "the defendant be adjudged to pay to the plaintiff the sum of $550, and interest thereon at the legal rate from the time the debt arose until it is paid in full, together with costs, expenses, disbursements, and attorney's fees."

The defendant in its answer admits the execution of the lease, but denies the other allegations of the complaint. It sets up as a special defense that, even assuming that the

defendant had continued in possession of the house after the lease terminated, or that the plaintiff had not resumed possession of the property at the termination of the contract, the responsibility therefor devolves exclusively upon the plaintiff, her agents and attorneys in fact, as the defendant has not, either directly or through any person in its name, enjoyed the possession of the property at any time subsequent to the expiration of the lease. The trial court adjudged the defendant to pay to the plaintiff the sum of $550 claimed, with interest from the date of the commencement of the action, but without special imposition of costs. Both parties appealed from that judgment.

The first three errors assigned by the plaintiff in the case herein are identical with, and have the same basis as the second, third, and fourth errors, which plaintiff assigned in the preceding case between the same parties and which this court overruled on the ground set forth in the opinion therein.

The failure of the trial court to find that the defendant was not in possession of the demised premises during the months of November and December, 1929, and that, if the plaintiff did not enter into possession of the said premises at the expiration of the lease, it was due to the fault and obstinacy of the said plaintiff, her agents and attorneys in fact, is assigned as error. It is further urged that the judgment appealed from is contrary to law and against the weight and preponderance of the evidence. The defendant contends that the complaint herein was drawn on the theory of a tacit renewal of the lease in accordance with section 1456 of the Civil Code (1930 ed.), which reads as follows:

"If, on the expiration of the contract, the lessee continues enjoying the thing leased for fifteen days with the acquiescence of the lessor, it shall be understood that there is an implied renewal for the time mentioned in sections 1467 and 1471 unless a notice has previously been given."

Both parties agree that no tacit renewal of the lease has taken place. The defendant argues, however, that it was in-

cumbent upon the plaintiff to prove the existence of a second lease by tacit renewal and that it was by plaintiff's own evidence that the existence of her cause of action was disproved. The plaintiff maintains that the action is not based on a tacit renewal of the lease, because it was not with her consent but against her own will that the lessee continued in possession of the building. It is an established fact, admitted by both parties, that the plaintiff, through her attorney in fact, on October 18, 1929, informed the defendant that the lease was to expire on the 22nd of that month, and requested the defendant to deliver to her, on the 23rd, the keys of the house after restoring the building to the same condition in which it was when the said lease was signed. The plaintiff contends in her brief that the action herein is based upon the contractual obligations assumed by the lessee under the lease, and upon the provisions of law which supplement said contract.

The defendant argues that the relief sought by the plaintiff would lie if a tacit renewal of the lease existed, but as such renewal has not been proved, the plaintiff should have resorted to the proper action for damages by reason of the withholding or enjoyment of the possession of the premises after the expiration of the lease. In the opinion of the defendant, the complaint in the latter case ought to have been drafted as in an action of assumpsit for the use and occupation of the property. The argument is advanced that both these remedies are inconsistent with each other, since the former is based on the assertion or existence of a tacit renewal of the lease and the latter on the denial or nonexistence of such agreement. Before deciding this point, we will transcribe below some of the facts which the trial court held proved and as to which there is no disagreement between the parties:

"The evidence in the present case has shown that during the time of the lease and of its extension the defendant paid the monthly

rental of $275 by semesters in advance; that on October 18, 1929, that is, four days prior to the expiration of the lease, the plaintiff, through her attorney in fact Enrique Abarca Sanfeliz, requested the defendant to deliver on the 23rd of October 1929, the keys of the premises, to have the upper and ground floors vacated and restore them in the same condition in which they were when the lease was signed, inasmuch as some alterations had been made in the building without the intervention of the lessor, and she informed the defendant that if at the termination of the contract the house was not returned, the same conditions which had been stipulated therein would apply, the holding over period not to exceed 30 days; that on October 21, 1929, the bank answered and requested to be informed as to what alterations were desired in the building and in what condition was the said building when the contract was signed; that at the termination of the lease the plaintiff did not take possession of the building because the same had not been delivered free from tenants and properly restored; that the premises continued in this condition during the months of November and December, 1929, for which rent is claimed; that it appeared from a notarial act executed by Ernesto Fernando Schlüter on November 5, 1929, that the building had been sublet by the Bank of Nova Scotia to the firm of Sobrinos de Ezquiaga, S. en C., by deed executed on August 12, 1919, and that the said firm assigned the aforesaid sublease to Ernesto Fernando Schlüter on January 18, 1928; that on October 23, 1929, Ernesto Fernando Schlüter was in actual possession of the building, the upper story of which was occupied by tenant María Maldonado and the ground floor thereof by Manuel García Colón and Antonio Rosa, also tenants with offices on that floor, as appears from said notarial act, which was notified on November 5, 1929, to R. M. Duff, as representative of the defendant, who refused to accept the keys tendered by Ernesto Fernando Schlüter because some were missing and the building had not been totally vacated, and rejected the tacit renewal of the lease of October 22, 1918, which expired on October 22, 1929; that Enrique Abarca Sanfeliz refused also to receive the keys under those circumstances; that on November 29, 1929, the plaintiff addressed a letter to the defendant, demanding payment of $275 among other amounts, as rent due for one month, and on December 21, 1929, she wrote another letter to defendant demanding payment of $275 as rent for the monthly period from November 22 to December 22, 1929; and that engineer Egozcue prepared an estimate of the repairs that were necessary to be made in the building, amounting to $1,940.00.''

It is true that the plaintiff limits her claim to the sum of $550, as the amount of two monthly installments of rent, owing from the defendant to the plaintiff and reckoned from the date of the expiration of the lease; but we think that, even though no tacit renewal of the lease took place, the plaintiff, under the allegations of the complaint, is entitled to recover the $550 claimed as the amount of the rent on the house for the two monthly periods following the termination of the said contract.

In a letter which Enrique Abarca Sanfeliz, plaintiff's attorney in fact, wrote to the defendant on October 18, 1929, demanding the delivery of the keys of the house, with the upper and ground floors vacated, the following paragraph appears:

"You will oblige me by proceeding to restore as soon as possible the building so as to avoid any delay in delivering the same. it being of course understood that, from and after the expiration of the lease and for a period not to exceed 30 days, the same leasing terms stipulated in the said contract will be. in force."

Here the plaintiff establishes the same terms of the existing contract of lease in case the defendant should retain the house for a period not exceeding thirty days. In another letter from Mr. Abarca to the defendant, dated December 21, 1929, he informs the latter that on the 22nd of that month, that is, on the following day, two months will have elapsed since the termination of the lease and debits the defendant for the amount of the rent due at the rate of $275 per month. On January 18, 1930, Mr. Abarca again writes to the defendant and confirms his previous letters, in which he had requested the remittance of the rent due in accordance with the contract, together with interest thereon.

It should be noted that the plaintiff insists that the contract has expired but at the same time she claims the rent, taking as a basis for calculating the amount thereof the monthly rental stipulated in the lease, which she considers as termi-

nated. Although a lessor is not limited in his claim after the expiration of the lease, by the amount of the rent originally agreed upon, he may, however, in our opinion, make claim for the same amount thus stipulated if the lessee continues in the possession of the demised property and fails to restore it in due time in the same condition in which he received it. In the present case all that the plaintiff claims is the monthly rent stipulated in the contract and which, according to the evidence, is below $305, the amount of the rent which the house was producing after its return to its owner and at the time of the trial. Mr. Abarca estimated at $325 monthly the value of the rent at the expiration of the lease, because financial conditions were better at that time than when the house was finished and put up for rent. However, the complaint only prays that the defendant be adjuged to pay the sum of $550, which is the amount of two monthly installments due at the time the property was restored to the plaintiff. The court below very wisely granted that sum, this being the only compensation asked in a pleading that should prevail.

It has been generally held by some courts that the reasonable value of the rent may be fixed at a rate other than that stipulated in the original contract of lease. There are also cases in which damages were assessed according to the stipulated rent. *Glover* v. *Fidelity & D. Co.*, 75 Wash. 606, 135 Pac. 486; *O'Connel* v. *Arai*, 63 Wash. 280, 115 Pac. 95; *Wilson* v. *Barnes*, 234 Pac. 1029. But regardless of the state of judicial opinion on this particular point, there is no doubt that even in those cases in which damages are claimed, the rent originally stipulated may be an element to be considered in assessing the amount of such damages.

In our view the plaintiff, under the allegations of the complaint and the evidence heard, is entitled to recover the monthly rent accrued after the expiration of the lease. Where a lessee continues in possession after the lease has expired, the lessor may either treat him as a trespasser and

recover damages from him, or claim from such lessee the payment of rent under the stipulations of the original contract for the time during which the tenant has retained possession of the demised premises. Moreover, it would not seem wrong to maintain that a lessee who, either directly or through a person to whom he has sublet the property, fails to surrender possession of the demised property at the proper time and in the same condition in which he received it, impliedly binds himself to continue paying the rent originally stipulated until the restitution takes place, should the lessor choose to enforce that liability.

In the case at bar, considering the allegations of the complaint, it is evident that the lessor advances her claim, in contemplation of the stipulations agreed upon with the lessee in the original lease. Within the scope of her allegations, the plaintiff is entitled to a judgment in her favor. Such is the conclusion we have reached after considering the provisions of our Civil Code relating to contracts of lease, and our views in this connection coincide with those held by some courts in the continental United States. It has been held there that unless full possession of the demised property has been surrendered to the lessor, the lessee will continue to be liable for the rent, even though it became impossible for him to surrender possession by reason of the obstinacy or wrongful conduct of the person to whom the property had been sublet, whether totally or partially. It has also been held that it is the duty of a lessee who sublets during the term to see that his sublessee gives up possession, and that a holding over by his subtenant is considered a holding over by him, and subjects him to the same liabilities. 36 Corpus Juris 61.

The case of *Campau* v. *Michell*, 61 N. W. 890, is very similar to the case herein. In the cited case two buildings had been leased to defendant Carl N. Michell to be used as stores. The defendant sublet premises No. 34 to one Schmidt.

On March 16, 1892, the plaintiff Alexander M. Campau wrote to the defendant, reminding him that the lease would expire on April 30, 1892, and that if he wished to continue occupying building No. 34 thereafter, the rent would be $1,400 annually. The plaintiff again wrote to the defendant on April 6th of the same year, assuming to do it at the latter's request, stating that the building would not be leased for a term of less than one year and that if at the expiration of the existing contract the lessee continued in possession of the premises, the lessor would take it for granted that he accepted to lease it according to the terms mentioned in his previous letter. In his reply the lessee denied having made any request with reference to the building and stated that he did not want the premises after the expiration of the lease. By that time the lessee had already written to the subtenant Schmidt notifying him of the date on which the lease expired and advising him that if he desired to keep the premises, he should deal with its owner, Mr. Campau. When Schmidt was about to vacate the property, an agent of the lessor called on him and told him that the premises had been leased again to Michell. Relying on this representation, Schmidt delayed for several days the vacating of the building. The lessor demanded payment of rent for May and the lessee, who did not know that Schmidt had continued occupying the premises, saw him at once and informed him of the true situation. On May 9th Schmidt sent the keys of the building to Campau who returned them to the defendant and stated that he could not accept them. The defendant refused to accept them, but the plaintiff threw them on a show case of the defendant, and left them there. On July 11th, Campau, through his counsel, wrote a letter to Michell stating that he considered the lease on the property as continued, and that in case he took possession of the premises as owner he would credit Michell with any proceeds received therefrom. We further stated that, if agreeable to Michell, the latter could let plaintiff's agent have the keys, and that they would do their best

with the premises upon that basis. Michell replied and said that he was not responsible for the rent, and that the surrender of the keys under the circumstances was not deemed as an assent to the statement set forth in the letter from Campau to him. The trial court rendered judgment against Michell for one month's rent, at the rate of $1,400 annually, with interest. In affirming the judgment, against which the plaintiff had brought error, the Supreme Court of Michigan said:

"On these findings of fact judgment was entered for rent of the store for the month of May at the rate of $1,400 per annum, with interest. The only exception is that the facts found do not support the judgment. Plaintiff brings error, and insists that the judgment should have been for the two months' rent then due. By the terms of the old lease. the rent was payable monthly in advance, and by the terms of plaintiff's letter of March 16, 1892, the rent was to be paid in the same manner, but at the rate of $1,400 per year. The holding was for less than a month, and it is evident that the defendant did not intend to hold over beyond the year, and create a tenancy after that time. The court found that the holding over by the tenant was not intended by him or by defendant to create a tenancy after May 1, 1892. Plaintiff's counsel, in his brief, lays down the familiar rule that when a tenant enters under a parol lease for a year, and holds over, and when a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year; but the landlord may treat him as a trespasser or as a tenant holding over upon the terms of the original lease. And counsel insists that this case falls within the rule thus laid down, whether the holding over was intentional or involuntary; and says that, if the defendant himself had been in actual possession, and held over for the length of time that the subtenant did, no question could arise but that he would have been held for the year. He also contends that the fact that the premises were occupied by a subtenant could make no difference in the rule, as it was the duty of the tenant to put the subtenant out within the time of the former lease. Taylor. in his work on Landlord and Tenant (section 524), lays down the rule that: 'Where he (the tenant) has let the whole or any part of the premises to an undertenant, who is in

possession at the termination of the lease, he must get him out, otherwise he will not be in the situation to render that complete possession to which the landlord is entitled; and, unless the entire possession is delivered up, the tenant's responsibility for rent will continue, although it may have become impossible for him to give the landlord full possession in consequence of the obstinacy or ill will of an undertenant to whom he has let a part or whole of the premises, and who refuses to quit; for in such case the landlord may refuse to accept possession, and hold the original tenant liable.' "

After quoting from Taylor, as above, the Michigan court further said that, undoubtedly, this is the well-settled rule, and cited the cases of *Brewer* v. *Knapp*, 1 Pick 332; *Dimock* v. *Van Bergen*, 12 Allen 551; *Lubetkin* v. *Brewing Co.* (Dist. Ct.), 4 N. Y. Supp. 195.

In the case at bar Enrique Abarca, acting for the plaintiff, refused to accept the keys of the house because the premises had not been surrendered to him free from tenants, and also because certain repairs were necessary. The defendant certainly could not compel him to take possession without first complying with the contracted obligations.

It is clear to us that it is the lessee's duty to surrender the demised premises to the lessor, even where the proprty has been sublet and the sublessee has actual possession thereof.

According to section 1440 of the Civil Code (1930 ed.), where in a contract of lease of a thing there is no express provision to the contrary, the lessee may sublet the whole or any part of the thing leased, without prejudice to his liability for the performance of his contract with the lessor. Far from relieving the lessee of his obligations under the contract, this section confirms such obligations, and as the return by the lessee of the demised property at the expiration of the lease in the same condition as that in which he received it is one of those obligations, the defendant bank can not absolve itself of the contracted liability on the plea that a sublessee is in actual possession of the premises.

Referring to section 1550 of the Spanish Civil Code, which is identical with section 1440 of our Code (1930 ed.), the Spanish commentator Manresa says:

"In the contract of sublease only the sublessor and the sublessee have participated; the rights and obligations arising therefrom refer to them; the lessor has taken no part in the agreement.

"From this it follows that a sublease does not novate the relations existing between the lessor and the lessee, now transformed into a sublessor, since those relations, as already stated, arise from a distinct contract. This rule. which derives from the stern principles of logic, has been recognized by the Code in its section 1550 which, while permitting the lessee to sublet the thing leased, unless expressly forbidden to do so by the lease, provides that such right must be understood without prejudice to his liability for the performance of his contract with the lessor.

"So that the original lease subsists in its entirety. The lessee continues to be bound by his obligations and he may, similarly, enforce his rights as such. The only thing which may possibly occur is that those obligations will not be performed by the lessee himself, but by the sublessee to whom the lessee will compel to perform them. And the rights that he may demand from the lessor will be demanded in order to enable him to perform in favor of the subtenant the obligations assumed by him by reason of the sublease."

The plaintiff was not bound to accept the premises, unless surrendered to her free from tenants and in the same condition as that in which it was at the time of the execution of the lease.

As to the repairs, it is contended by the defendant that it did not know of the condition of the building at the time of the execution of the lease, or of the damages or deterioration which it may have suffered, or of the alterations to be made in it. It might be assumed that the defendant knew of the condition in which the demised property was, when taking charge thereof. However, we must admit that memory does not always recollect things in detail and that perhaps it should be easier for the landlord than for the tenant to remember the condition of the premises. For this reason

we do not excuse the silence of Mr. Abarca upon being requested by the bank to state the repairs that should be made in the leased property belonging to his principal.

The plaintiff urges in her appeal that the court below erred in rendering judgment without special imposition of costs. In our opinion the appellant is right. The defendant bank should not have refused to pay rent which accrued after the expiration of the lease. Its refusal to pay is a clear case of obstinacy justifying the imposition of costs.

It is also urged by the plaintiff that the lower court erred in dismissing her claim for trebled damages. And we ask, where is the allegation setting forth such claim? Where in the complaint does the plaintiff ask that a judgment be rendered for three times the amount of the actual damages? The plaintiff may not go beyond the limits marked by her own pleadings and belatedly ask for the recovery of a larger amount than that for which she actually sued. It is clearly stated in the complaint that the claim is only for the sum of $550, the aggregate of two monthly rent installments, and the prayer of the complaint is for judgment against the defendant for the above sum. This is the only compensation sought and the only one that the court can allow.

In our opinion, the judgment appealed from must be affirmed, but with the modification that costs must be imposed on the defendant.

Mr. Justice Wolf dissented, stating that he was not in agreement with the opinion of the court as to the first two assignments of error attributed to the lower court; but that if such errors could be disregarded, he would be in agreement with the other conclusions in the opinion.