CELESTINA ABARCA SANFELIZ VDA. DE GUMERSINDO SUÁREZ, demandante, apelante y apelada, *v.* BANK OF NOVA SCOTIA, demandado, apelado y apelante.

No. 5849.—*Sometido:* Diciembre 23, 1932. *Resuelto:* Junio 19, 1934.

948

*F. Solo Gras* y *R. Díaz Collazo,* abogados de la apelante apelada; *J. Henri Brown, C. Ruiz Nazario* y *G. E. González,* abogados del apelado apelante.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

Enrique Abarca Santeliz, en su carácter de apoderado de Celestina Abarca Sanfeliz, inició una acción en cobro de dinero contra el demandado Bank of Nova Scotia. Se alegó en la demanda que doña Celestina Abarca Sanfeliz, viuda de Gumersindo Suárez, es dueña de una casa que ella y su esposo dieron en arrendamiento al Bank of Nova Scotia en 22 de octubre de 1918 por un término de seis años, con opción a prorrogarlo por cinco años más, y por un canon mensual de $275, pagadero por semestres anticipados; que vencido el término original de seis años el demandado utilizó la opción a prorrogarlo por cinco años y que el término adicional expiró en 22 de octubre de 1929; que a pesar de haber expirado el referido contrato el demandado ha quedado en posesión y disfrute de la casa y adeuda por tal concepto las mensualidades correspondientes a los meses vencidos en 22 de noviembre y diciembre de 1929, a razón de $275 mensuales; que el demandado ha sido requerido para que satisfaga el importe de dichas mensualidades, ascendente a la suma de

$550, y que han resultado infructuosas todas las gestiones practicadas por la demandante para obtener que el demandado satisfaga la suma que por concepto de arrendamiento adeuda, no habiendo pagado ni en todo ni en parte la ameritada cantidad de $550, la cual adeuda en su totalidad.

En mérito de lo expuesto la parte demandante solicita que se declare con lugar la demanda y "se condene al demandado a pagar a la demandante la cantidad de $550, los intereses legales de dicha suma desde que se incurrió en la deuda hasta su total pago, más las costas, gastos, desembolsos y honorarios de los abogados de la parte demandante."

El demandado admite en su contestación el otorgamiento del contrato de arrendamiento, niega las demás alegaciones de la demanda, y establece como defensa especial que en el supuesto de que el demandado hubiera quedado en posesión de la casa con posterioridad a la terminación del contrato o en el supuesto de que la demandante no hubiera entrado en posesión de la finca al vencimiento de dicho contrato, la responsabilidad recae exclusivamente sobre la propia demandante, sus agentes y apoderados, no habiendo el demandado ni por sí ni por medio de persona alguna a su nombre disfrutado de la posesión de la finca con posterioridad a la expiración del arrendamiento. La corte inferior dictó sentencia condenando al demandado a satisfacer a la demandante la suma de $550 reclamada en la demanda, e intereses desde que se inició la acción, sin especial condenación de costas. De esta sentencia apelaron ambas partes.

■■■ Los tres primeros errores atribuídos por el demandante a la corte inferior se basan en los mismos hechos y son idénticos a los errores 2, 3 y 4 formulados en el caso que precede a esta opinión, seguido entre las mismas partes, los cuales desestimó esta corte por los fundamentos que allí se expresan.

Se alega que la corte inferior erró al no resolver que la demandada no estaba disfrutando de la posesión del inmueble arrendado durante los meses de noviembre y diciembre de

1929, y que la causa de que la demandante no entrara en posesión de dicho inmueble al vencer el arrendamiento fué la propia culpa y temeridad de dicha demandante, sus agentes y apoderados. Se alega además que la sentencia apelada es contraria a derecho y al peso y preponderancia de la prueba. Entiende el demandado apelante que la demanda en este caso fué redactada sobre la base de una tácita reconducción del contrato de arrendamiento de acuerdo con el artículo 1456 del Código Civil, edición 1930, que dice así:

"Si al terminar el contrato permanece el arrendatario disfrutando quince días de la cosa arrendada con acquiescencia del arrendador, se entiende que hay tácita reconducción por el mismo tiempo que establecen los artículos 1467 y 1471, a menos que haya precedido requerimiento."

Ambas partes están de acuerdo en que no ha habido tácita reconducción. El demandado, sin embargo, arguye que la demandante estaba limitada a probar la existencia de un segundo arrendamiento por tácita reconducción, y que su propia evidencia se encargó de negar la existencia de tal causa de acción. La demandante sostiene que la acción no se basa en la tácita reconducción, puesto que no fué con su consentimiento sino contra su propia voluntad que el arrendatario permaneció en posesión del edificio. Es un hecho probado y aceptado por ambas partes que la demandante, por conducto de su apoderado, comunicó a la demandada, en 18 de octubre de 1929, que el contrato vencía el 22 de dicho mes, y la requirió para que le entregara las llaves de la casa el día 23, restableciéndola a las mismas condiciones en que se encontraba al firmar el referido contrato. La demandante sostiene en su alegato que su acción se basa en la obligación contractual asumida por el arrendatario en el contrato de arrendamiento y los preceptos de ley supletorios a dicho contrato.

Arguye el demandado que el remedio solicitado por la demandante sería procedente en caso de existir una tácita reconducción, pero que como no se ha probado su existencia,

la demandante debió recurrir a la correspondiente acción reclamando daños y perjuicios por la detentación o disfrute de la posesión de la casa después de vencido el arrendamiento. La demanda, en este último caso, a juicio de la demandada, debió participar de la índole de una acción en *assumpsit* por el uso y ocupación de la finca. Se arguye que ambos remedios son antagónicos, porque el primero se basa en la afirmación o existencia de un contrato de arrendamiento por tácita reconducción y el segundo en la negación o inexistencia de tal contrato. Antes de resolver esta cuestión vamos a permitirnos copiar los hechos que ha declarado probados la corte inferior y sobre los cuales no existe discusión entre las partes:

"La evidencia en este caso ha demostrado que durante el término del contrato de arrendamiento y su prórroga, el demandado satisfizo el canon mensual de $275.00 por semestres adelantados, que en 18 de octubre de 1929, o sea cuatro días antes del vencimiento del contrato, la demandante, por conducto de su apoderado Enrique Abarca Sanfeliz, requirió al demandado para que el día 23 de octubre, 1929, le entregara las llaves de la propiedad, desalojados los altos y los bajos, y en las mismas condiciones en que se encontraba cuando se firmó el contrato, por haberse efectuado ciertas alteraciones en el edificio sin la intervención del arrendador, y comunicándole que si al vencimiento del contrato no se le entregaba la casa, regirían las mismas condiciones estipuladas, no excediendo el término de 30 días; que el 21 de octubre, 1929, el banco contestó preguntando qué cambios se deseaban hacer al edificio, y en qué condiciones estaba al firmarse el contrato; que al vencimiento del contrato la demandante no se hizo cargo del edificio, porque no le fué entregado libre de inquilinos y debidamente preparado, y así continuó durante los dos meses de noviembre y diciembre, 1929, por cuya renta se reclama, apareciendo de un acta de requerimiento notarial hecha por Ernesto Fernando Schlüter, el 5 de noviembre, 1929, que el edificio le había sido subarrendado por el Banco de Nova Scotia a la mercantil Sobrinos de Ezquiaga, S. en C., a virtud de escritura de 12 de agosto de 1919, y dicha mercantil cedió el repetido subarriendo a Ernesto Fernando Schlüter el 18 de enero de 1928, que en 23 de octubre de 1929, Ernesto Fernando Schlüter estaba en posesión material del edificio y lo ocupaban los inquilinos María Maldonado en los altos y Manuel García Colón y Antonio Rosa con oficinas en los bajos, según consta

de dicha acta que se notificó el 5 de noviembre, 1929, a R. M. Duff, como representante del demandado, quien se negó a aceptar las llaves de Ernesto Fernando Schlüter, por no estar completas, ni desalojado totalmente el edificio, y rechazó la tácita reconducción del contrato de arrendamiento de 22 de octubre, 1918, que expiró el 22 de octubre, 1929, habiendo además el Sr. Enrique Abarca Sanfeliz rehusado también recibir las llaves en esas condiciones; que en 29 de noviembre, 1929, la demandante dirigió una carta al demandado, reclamándole, entre otras sumas, $275 00 de un mes vencido de alquiler y en 21 de diciembre, 1929, le dirigió una comunicación cobrándole la cantidad de $275.00, de la renta de noviembre 22 a diciembre 22, 1929; y que por el Ingeniero Egozcue se hizo un presupuesto de las reparaciones que había necesidad de efectuar en el edificio, montantes a $1,940.00.''

Ciertamente la demandante se limita a reclamar la suma de $550, importe de dos mensualidades que por concepto de arrendamiento · adeuda la demandada a la demandante a partir de la fecha en que venció el contrato; pero es nuestro criterio que aunque no exista la tácita reconducción, de acuerdo con las alegaciones de la demanda la demandante está en condiciones de obtener el cobro de los $550 que reclama como importe de las rentas de la casa por los dos meses siguientes a la terminación de dicho contrato.

En la carta que Enrique Abarca, apoderado de la demandante, dirigió a la demandada en 18 de octubre de 1929, requiriéndola para que le entregase las llaves de la casa, desalojados los altos y los bajos, aparece el siguiente párrafo:

''Estimaré que procedan a la rehabilitación del edificio a la mayor brevedad posible con el objeto de evitar demora en la entrega, entendiéndose desde luego que, a partir del vencimiento del contrato, no excediendo el término de 30 días, regirán las mismas condiciones de arrendamiento estipuladas en dicho contrato.''

Aquí la demandante fija las mismas condiciones establecidas en el contrato de arrendamiento para en caso de que la demandada retuviese la casa por un período no mayor de treinta días. En otra carta que con fecha 21 de diciembre de 1929 dirige el Sr. Abarca a la demandada, le dice que el

día 22 del mismo mes, o sea al día siguiente, se cumplen dos meses de vencido el contrato de arrendamiento y le carga la renta vencida a razón de $275. En enero 18 de 1930 el Sr. Abarca escribe nuevamente a la demandada confirmando sus cartas anteriores, en las que le pedía le enviase las rentas vencidas de acuerdo con las bases del contrato, y los intereses correspondientes.

Nótese que la demandante insiste en que el contrato ha vencido y reclama al mismo tiempo la renta, tomando como base para determinar su cuantía el canon mensual fijado en el mismo contrato de arrendamiento que considera vencido. Aun cuando el arrendador no está obligado, una vez expirado el contrato, a reclamar las rentas originalmente convenidas, puede, a nuestro juicio, continuar reclamándolas, cuando el arrendatario permanece disfrutando de la cosa arrendada y deja de restituirla a su debido tiempo en la misma forma en que la recibió. En este caso la demandante se limita a reclamar como compensación la cuota mensual acordada en el contrato, que según la prueba es inferior a la suma de $305, importe de la renta que producía la casa después de restituída a su dueño, y en los momentos de celebrarse el juicio. El Sr. Abarca estimó el valor de esas rentas en $325 al expirar el contrato, porque las condiciones comerciales estaban mucho mejor en dicha fecha que cuando se terminó la casa para ponerla en alquiler. Sin embargo, la demanda únicamente pide que se condene a la demandada al pago de la cantidad de $550, que es el importe de las dos mensualidades vencidas hasta el instante en que la finca fué restituída a la demandante. La corte inferior con muy buen acierto concedió esa suma, que es la única compensación que se solicita en una alegación que debe prevalecer.

Se ha sostenido por algunos tribunales que el valor razonable de las rentas puede fijarse a un tipo diferente del convenido en el contrato original de arrendamiento. También hay casos en que los daños fueron fijados de acuerdo con la renta estipulada. *Glover* v. *Fidelity & D. Co.*, 75 Wash. 606,

135 Pac. 486; *O'Connell* v. *Arai,* 63 Wash. 280, 115 Pac. 95; *Wilson* v. *Barnes,* 234 Pac. 1029. Cualquiera que sea el criterio de los tribunales sobre este particular, no hay duda alguna de que aún en los casos en que se reclaman daños y perjuicios la renta originalmente convenida puede ser un elemento a considerar para fijar la cuantía de esos daños.

En nuestro sentir la demandante tiene derecho a obtener el cobro de las mensualidades vencidas después de expirado el contrato de acuerdo con las alegaciones de la demanda y la prueba practicada. El arrendador puede considerar al arrendatario como un intruso, cuando no ha sido restituído en la posesión después de expirado el contrato, y reclamarle daños y perjuicios, o puede exigirle el pago de la renta de acuerdo con los términos del contrato original, por el tiempo que ha permanecido reteniendo la posesión. En realidad no parece desacertado sostener que el arrendatario que directamente o a través de la persona a quien ha subarrendado la finca, deja de restituirla a su debido tiempo en la forma en que la recibió, se obliga tácitamente a continuar pagando las rentas originalmente convenidas hasta el momento de la restitución, si el arrendador tiene a bien exigir esta responsabilidad.

En el presente caso, ateniéndonos a las alegaciones de la demanda, es evidente que el arrendador establece su reclamación, teniendo en cuenta lo convenido con el arrendatario en el contrato original. Dentro del círculo de sus alegaciones la demandante tiene derecho a obtener un fallo en su favor. Esta es la conclusión a que hemos llegado luego de haber estudiado las disposiciones de nuestro Código Civil relacionadas con el contrato de arrendamiento. Este criterio está en armonía con el sustentado por algunas autoridades americanas. Se ha sostenido que a menos que el arrendador haya sido restituído en la posesión completa de la cosa arrendada, el arrendatario continuará siendo responsable por el importe de la renta, aunque se le haya hecho imposible la

restitución a consecuencia de la obstinación o mala conducta de una persona a quien haya subarrendado la cosa en todo o en parte. También se ha sostenido que es deber del arrendatario que subarrienda procurar durante el término de su arrendamiento que el subarrendatario entregue la posesión, y que la permanencia (*holding over*) de éste en la finca se considera también la permanencia del arrendatario o subarrendador, quien continúa sujeto a las mismas responsabilidades. 36 Corpus Juris 61.

El caso de *Campau* v. *Michell,* 61 N. W. 890, resuelto por la Corte Suprema de Michigan, tiene mucho parecido al que en estos momentos nos ocupa. Este es un caso en que se arrendaron dos casas para tienda al demandado Carl N. Michell. Este subarrendó la casa No. 34 a un individuo de apellido Schmidt. En 16 de marzo de 1892, el arrendador demandante, Alexander M. Campau, escribió al arrendatario recordándole que el contrato expiraba en 30 de abril de 1892 y que si quería continuar con la casa No. 34 debía pagar $1,400 al año. Volvió a escribirle en 6 de abril del mismo año, asumiendo que lo hacía a su ruego, diciéndole que la casa no se arrendaría por un término menor de un año y que si al expirar el contrato continuaba en posesión de la misma entendería que él aceptaba arrendarla de acuerdo con los términos mencionados en su carta anterior. Contestó el arrendatario negando haber hecho ruego alguno con respecto a la casa y haciendo constar que no la deseaba después de expirado el contrato. Ya para esta fecha el arrendatario había escrito al subarrendatario Schmidt, notificándole la fecha en que expiraba el contrato y diciéndole que si quería permanecer en la casa debía entenderse con su dueño Sr. Campau. Cuando Schmidt se disponía a desocupar la finca se personó en su casa un agente del arrendador, quien le dijo que la finca había sido arrendada nuevamente a Michell. Creyéndolo así Schmidt demoró algunos días la desocupación de la misma. El arrendador demandó pago de la renta por el mes de mayo y el arrendatario, que no sabía que Schmidt

continuara en la finca, lo vió inmediatamente para informarle de la situación. Schmidt envió, en 9 de mayo, las llaves de la casa a Campau, quien las devolvió al arrendatario, informándole que no podía aceptarlas. Se negó éste a recibirlas, pero el demandante las arrojó en una caja del arrendatario y las dejó allí. En 11 de julio, Campau, por conducto de su abogado, escribió a Michell .diciéndole que consideraba que la casa continuaba arrendada y que en caso de que tomara posesión de la misma como dueño, le acreditaría lo que produjera a su crédito. Le decía además que si resultaba de su agrado le entregara las llaves a su mandatario y que ellos harían todo lo que pudieran con la casa sobre estas bases. Contestó Michell que no era responsable por las rentas y que la entrega de las llaves bajo estas circunstancias no debía entenderse como que él asentía a lo manifestado en la carta dirigida a él por el Sr. Campau. La corte inferior dictó sentencia condenando a Michell a satisfacer el importe de la renta de una mensualidad ·a razón de $1,400 por año con intereses. La Corte Suprema de Michigan, confirmando la sentencia apelada por el demandante, se expresó así:

"De acuerdo con estos hechos se dictó sentencia por el importe de la renta de la casa durante el mes de mayo a razón de $1,400 anuales con intereses. Se alega como único error que los hechos declarados probados no sostienen la sentencia. El demandante insiste en que la sentencia ha debido cubrir dos meses de la renta vencida. De acuerdo con los términos del viejo arrendamiento, la renta debía pagarse mensualmente por adelantado, y conforme· a los términos de la carta del demandante fechada en marzo 16 de 1892, la renta debía pagarse en la misma forma a razón de $1,400 por año. La retención (holding over) fué por menos de un mes y es evidente que el demandado no tuvo la intención de retener la casa y crear un nuevo término después de expirado el contrato. La corte inferior sostuvo que la retención por parte del arrendatario no tuvo el propósito de crear un nuevo arrendamiento después de mayo 1, 1892. El abogado del demandante en su alegato establece la regla familiar de que cuando un arrendatario acepta un contrato verbal por un año, y retiene la cosa, y cuando un arrendatario bajo un arrendamiento válido por años retiene la cosa, la ley supone un contrato

de su parte para renovar el arrendamiento en los mismos términos por un nuevo año; pero que el arrendador puede tratar al arrendatario como un intruso o como reteniendo la posesión de acuerdo con los términos del contrato original. Y el abogado insiste en que este caso cae dentro de la regla así establecida, ya sea intencional o involuntaria la retención de la propiedad; y dice que si el arrendatario mismo hubiese estado en la posesión material y retenido la propiedad por el período de tiempo que la retuvo el subarredatario, no surgiría duda alguna acerca de que estaría obligado a continuar el contrato por un nuevo año. Alega también que el hecho de que las premisas fuesen ocupadas por un subarrendatario no establece diferencia a la regla, toda vez que era el deber del arrendatario hacer desocupar al subarrendatario dentro del tiempo fijado en el contrato original. Taylor, en su obra sobre 'Landlord and Tenant' (sección 524 establece la regla así: 'Cuando el arrendatario ha subarrendado en todo o en parte las premisas a una tercera persona, que está en posesión al terminar el contrato, tiene el deber de hacerla desocupar, porque de otro modo no estaría en condiciones de restituir por completo la posesión a que tiene derecho el arrendador; y a menos que la posesión sea íntegramente restituída, la responsabilidad del arrendatario por la renta continuará, aunque le haya sido imposible la restitución a consecuencia de la obstinación o mala voluntad de un subarrendatario a quien ha arrendado una parte o la totalidad de las premisas y quien se niega a abandonarlas; porque en tal caso el arrendador puede negarse a aceptar la posesión y exigir responsabilidad al arrendatario original.'''

Después de copiadas estas palabras de Taylor, la Corte de Michigan dice que indudablemente ésta es la regla firmemente establecida, citando los casos de *Brewer* v. *Knapp*, 1 Pick. 332; *Dimock* v. *Van Bergen*, 12 Allen 551; *Lubetkin* v. *Brewing Co.* (Dist. Ct.) 4 N. Y. Supp. 195.

En el caso de autos Enrique Abarca, en representación de la demandante, se negó a aceptar las llaves de la casa, porque no se le entregaba libre de inquilinos y por alegar que eran necesarias ciertas reparaciones. La parte demandada no podía ciertamente obligarlo a tomar posesión sin cumplir con las obligaciones contraídas.

Para nosotros es claro que el arrendatario tiene el deber de entregar la cosa arrendada al arrendador, aunque la misma

haya sido subarrendada y se encuentre en la posesión material del subarrendatario.

De acuerdo con el artículo 1440 del Código Civil, cuando en el contrato de arriendo de cosas no se prohibe expresamente, podrá el arrendatario subarrendar en todo o en parte la cosa arrendada, sin perjuicio de su responsabilidad al cumplimiento del contrato para con el arrendador. Este artículo, lejos de relevar, ratifica la obligación del arrendatario de cumplir lo convenido en el contrato, y como una de las responsabilidades anejas al cumplimiento del mismo es la devolución de la cosa arrendada al concluir el arriendo, tal como la recibió, el banco demandado no puede exonerarse de la responsabilidad contraída bajo el pretexto de que la finca está en la posesión material de un subarrendatario.

Comentando el artículo 1550 del Código Civil Español, equivalente al 1440 de nuestro código, dice el comentarista Sr. Manresa:

"El contrato de subarriendo ha pasado entre el subarrendador y el subarrendatario; a ellos se refieren los derechos y obligaciones que crea; el arrendador no ha intervenido en él para nada.

"De aquí se deduce que el subarriendo no innova las relaciones existentes entre el arrendador y el arrendatario convertido en subarrendador, porque esas relaciones, como ya hemos dicho, proceden del nexo distinto. Esto, que se deriva del rigor de los principios, ha sido reconocido por el Código en el artículo 1550, en el cual, al propio tiempo que permite al arrendatario subarrendar si no se le ha prohibido expresamente, declara que tal facultad se entiende sin perjuicio de su responsabilidad al cumplimiento del contrato con el arrendador.

"De suerte que el primitivo arrendamiento subsiste íntegramente. El arrendatario deberá seguir cumpliendo sus obligaciones, y podrá, de igual modo, exigir sus derechos. Lo único que ocurrirá será que tal vez esas obligaciones no sean llevadas a cabo por el mismo arrendatario, sino que las hará cumplir al subarrendatario, y los derechos que del arrendador demande, los demandará para él poder satisfacer al subarrendatario lo que por razón del subarriendo le debe."

La demandante no estaba obligada a aceptar la finca mientras no se le entregara libre de inquilinos y en el mismo

estado en que se encontraba al tiempo de consumarse el contrato.

En cuanto a las reparaciones, la demandada alega que no sabía cuál era el estado de la casa al tiempo de ser entregada cuando se firmó el contrato, ni las pérdidas o deterioros que hubiese sufrido, ni los cambios que hubiera que hacerle. Es de suponerse que la demandada, al hacerse cargo de la finca, tuvo conocimiento del estado en que se encontraba. Sin embargo, hemos de reconocer que la memoria no siempre conserva el recuerdo de las cosas en detalle y que es quizás más fácil al propietario que al arrendatario recordar el estado de la finca. Por esta razón no excusamos el silencio del Sr. Abarca al ser invitado por el banco para señalar las reparaciones que debían hacerse en la casa de su mandante.

La parte demandante en su recurso de apelación alega que la corte inferior cometió error al dictar sentencia sin especial condenación de costas. Entendemos que la apelante tiene razón. El Banco demandado no debió negarse a satisfacer el importe de las dos mensualidades vencidas, después de haber expirado el contrato de arrendamiento. Su negativa a pagar es un caso claro de temeridad que justifica la imposición de costas.

También alega la demandante que la corte inferior erró al desestimar su petición de que se triplicaran los daños. Y nos preguntamos nosotros ¿dónde está esta alegación? ¿En qué parte de la demanda aparece la demandante reclamando que se dicte una sentencia por el triple del importe de esos daños? La Sra. Abarca no puede salvar el límite que se ha trazado en sus propias alegaciones para solicitar que se le dicte una sentencia por una cantidad mayor a la que pide. Claramente se dice en la demanda que únicamente se reclama la cantidad de $550, importe de las dos mensualidades, y la súplica de la demanda, de acuerdo con las alegaciones, pide que se dicte sentencia condenando al demandado a satisfacer esta cantidad. Esta es la única compensación que se pide y la única que nosotros podemos conceder.

*Opinamos que debe confirmarse la sentencia apelada, con la modificación de condenar en costas a la parte demandada.*

El Juez Asociado Señor Wolf disintió, haciendo constar que no está conforme con la opinión de la corte en cuanto a los dos primeros errores atribuídos a la corte inferior, pero que, de no existir estos errores, estaría conforme con los demás extremos de la opinión.