ANTONIA ARMSTRONG MAYORAL y sus hijos legítimos AN-TONIA, CARMEN, MARÍA MAGDALENA, FRANCISCA, JOSÉ ÁNGEL, LUISA y GUILLERMO JUAN RUBERT ARMSTRONG, demandantes y apelantes, *v.* JORGE J. JIMÉNEZ, sustituído por ROBERTO SÁNCHEZ VILELLA, COMISIONADO DE LO IN-TERIOR, demandado y apelado.

Núm. 10551.

*Sometido:* 3 de noviembre de 1952. *Resuelto:* 9 de diciembre de 1952.

*Cayetano Coll y Cuchí* y *Víctor A. Coll,* abogados de los apelantes; *Hon. Procurador General Interino J. B. Fernández Badillo* y *A. Torres Braschi, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Antonia Armstrong Mayoral y sus hijos legítimos instaron ante el extinto Tribunal de Distrito de San Juan en 10 de febrero de 1948 demanda de *injunction* contra Jorge J. Jiménez, en su carácter de Comisionado de lo Interior de Puerto Rico.([1]) Alegaron en ella, en lo esencial, que por

---

([1]) Por haber cesado Jiménez en su cargo, los apelantes solicitaron de nosotros se sustituyera a éste con Roberto Sánchez Vilella. Así lo decretamos.

escritura de 17 de enero de 1916 otorgada en la ciudad de Barcelona, España, su causante Luis Rubert Catalá adquirió una finca denominada San Patricio, situada en el barrio Monacillos del término municipal de Río Piedras, Puerto Rico, con cabida de 680 cuerdas de terreno, más o menos, especificando sus linderos; que la misma fué segregada por Antonio Ramos Mencos, su anterior dueño, de otra de mayor cabida, siendo el remanente de la finca principal adquirida por Luis Lloréns Torres; que en pleito promovido por el Pueblo de Puerto Rico contra Lloréns Torres aquél alegó ser dueño de un predio conocido con el nombre de "Manglar de la Punta de Cataño", con cabida de 1003.61 cuerdas, divididas, a los efectos administrativos, en tres parcelas, a saber: números diez, once y doce, radicadas en los términos municipales de Bayamón, Guaynabo y Río Piedras; que al fallecimiento de Luis Rubert Catalá los demandantes en su carácter de herederos testamentarios pasaron a ser dueños de la finca a que primeramente se ha hecho mención y que verificada una mensura de la misma en 3 de julio de 1923, su cabida quedó rectificada comprendiendo exactamente 776 cuerdas; que con posterioridad a esa rectificación los demandantes segregaron y enajenaron varias parcelas y la finca principal quedó reducida a 114.70 cuerdas, que describen; que ellos han estado y están en posesión de dicha finca y han ejercido y ejercen sobre la misma su derecho dominical sin limitación ni gravamen de clase alguna desde la fecha de su adquisición, y asimismo todos sus causahabientes (sic) por un período mayor de treinta años, con título debidamente inscrito en el registro de la propiedad; "que los demandados Jorge J. Jiménez y Admiral Daniel Barbey,(²) por sí y por medio de sus agentes y empleados, han penetrado ilegal y violentamente en dicha finca con anterioridad a la interposición de esta de-

(²) Por moción de 3 de febrero de 1950 los demandantes solicitaron del tribunal a quo que eliminara como demandados al Almirante Barbey y a los Estados Unidos de América y en 6 de febrero del mismo año el tribunal dictó sentencia en los términos solicitados.

manda, y amenazan continuar penetrando en forma ilegal y violenta en dicha finca, llevando a cabo mensuras y realizando actos perturbadores de la posesión de los demandantes, alegando que dicha finca está bajo su administración y custodia por virtud de sus cargos como Comisionado de lo Interior de Puerto Rico y Jefe de las Fuerzas Navales en Puerto Rico"; que la intervención ilegal y violenta en la propiedad de los demandantes no se ha limitado a lo anterior, sino que los demandados pretenden por sí y por medio de su agentes impedir que los demandantes gocen de la libre posesión de la propiedad que legítimamente les pertenece; y que no tienen otro remedio adecuado en ley para impedir las violaciones de su derecho por los demandados.

A esa demanda el demandado Jorge J. Jiménez presentó primeramente moción para desestimar fundada en que: (1) la misma no aduce hechos constitutivos de una causa de acción en su contra; (2) el tribunal carece de jurisdicción sobre la materia por razón de que él es un funcionario público y la acción es en substancia y efecto una contra el Pueblo de Puerto Rico, el que no ha dado su consentimiento para ser demandado ni ha renunciado a su inmunidad; y en que (3) la notificación del emplazamiento al Subcomisionado de lo Interior es insuficiente, toda vez que la misma no constituye una notificación efectiva en la persona de su superior. Declarada sin lugar esa moción, dicho demandado contestó aceptando algunas alegaciones de la demanda, negando otras y aduciendo como defensas especiales que: (1) no habiéndose declarado por sentencia firme con anterioridad a la tramitación del presente pleito que los terrenos objeto del mismo son propiedad de los demandantes y que por lo tanto los actos de posesión y dominio realizados por el Comisionado de lo Interior en dichos terrenos son inconstitucionales e inválidos de conformidad con lo dispuesto por la Ley núm. 1 de 25 de febrero de 1946 ((1) pág. 3), el tribunal carece de jurisdicción para dictar el auto de injunction solicitado; (2) la Ley núm. 76 de 1916 (pág. 155) concede a los demandantes un remedio

ordinario en ley para hacer valer sus alegados derechos, por lo cual no procede el remedio extraordinario de injunction invocado; (3) la acción entablada es de la naturaleza de un interdicto para retener la posesión y la misma no procede (a) por haber sido entablada después de transcurrir un año de haber el demandado realizado los alegados actos perturbadores de la posesión de los demandantes y (b) porque lo que hay envuelto en este caso es una cuestión de título sobre la finca descrita en la demanda, que no puede discutirse ni ventilarse en un procedimiento de injunction; (4) que los demandantes han incurrido en *laches;* y (5) que la finca objeto del recurso consiste de manglares que son propiedad de el Pueblo de Puerto Rico y han sido en todo momento de sus antecesores en título, el Gobierno de los Estados Unidos de América y la Corona de España, quienes los obtuvieron por derecho de descubrimiento y conquista.

Trabada así la contienda y luego de una conferencia anterior al mismo, fué el pleito a juicio. Las partes ofrecieron prueba testifical y documental, dictándose sentencia declarando sin lugar la demanda, con costas a los demandantes. En el curso de la opinión emitida en apoyo de la misma el tribunal a quo hizo constar que la finca objeto de este pleito está compuesta casi totalmente de manglares y es la misma que aparece marcada como parcela número diez en el plano preparado por el Departamento de lo Interior, División de Terrenos Públicos, titulado "Manglar de El Pueblo de Puerto Rico en la Bahía de San Juan", de fecha 4 de diciembre de 1919; que mediante proclama del Gobernador de Puerto Rico de 28 de mayo de 1918 la parcela número diez fué declarada en unión de otros terrenos, bosque insular bajo la supervisión del Comisionado de Agricultura y Trabajo; que el dominio de dicha parcela aparece inscrito a favor de El Pueblo de Puerto Rico con fecha 29 de octubre de 1940; que la misma, en unión a otras, fué traspasada por el Pueblo de Puerto Rico a los Estados Unidos de América el 20 de noviembre de 1940; que con excepción de una pequeña porción de

2.36 cuerdas, que retuvieron para fines de saneamiento, los Estados Unidos de América devolvió a El Pueblo de Puerto Rico la parcela número diez por escritura de 11 de enero de 1950; y que por las declaraciones de los testigos de ambas partes llegaba a la conclusión de que tanto El Pueblo de Puerto Rico, por mediación de sus funcionarios y empleados, como los Estados Unidos, a través de sus funcionarios y empleados de la Marina, así como los demandantes, estuvieron en posesión simultáneamente de la parcela objeto del pleito durante todos los últimos años. En sus conclusiones de derecho el tribunal inferior manifestó que los demandantes insistían en que el litigio debía resolverse a base de los casos de *Central Victoria* v. *Kramer*, 35 D.P.R. 183 y 45 D.P.R. 782, los cuales, a su entender, no eran aplicables, ya que el título de la parcela estaba inscrito desde hacía once años en el registro de la propiedad a favor del Pueblo de Puerto Rico; que no puede impedirse mediante injunction el cumplimiento de una actuación autorizada por ley de un funcionario público, a menos que se haya determinado por sentencia final, firme e inapelable, que dicha actuación autorizada por ley es inválida, citando la Ley núm. 1 de 25 de febrero de 1946; que el injunction no es el remedio propio y adecuado para dilucidar derechos sobre bienes inmuebles, especialmente en casos en que el conflicto de títulos levanta un serio problema legal; que sin decidir cuál de los dos títulos es el más válido o el preferente podía decir que el de los demandantes tiene varias debilidades; que el exceso de cabida no se inscribió hasta el 1922, de manera que cuando en 1902 entró a regir el Código Político, cuyo artículo 9 prohibe la adquisición de terrenos públicos por prescripción, sólo había transcurrido uno de los 30 años necesarios para la adquisición por los demandantes de esa hacienda mediante la prescripción extraordinaria que bajo el Código Civil Español se daba contra el Estado; que tampoco prosperaría la acción como una de reinvindicación, ya que según la demanda, y de acuerdo con la prueba, los demandantes han estado también en posesión de la finca y la ac-

ción reivindicatoria solamente procede a favor del que no posee la finca en litigio; y que además de no haberse prestado la fianza, ya había expirado el término de dos años que concede la Ley 76 de 1916, según fué enmendada.

Los demandantes apelaron. Sostienen que la corte sentenciadora erró al declarar: (1) que éste es un pleito contra El Pueblo de Puerto Rico y que no habiéndose obtenido el consentimiento de El Pueblo debe desestimarse la demanda; (2) que en este caso no puede impedirse mediante injunction el cumplimiento de una actuación por ley de un funcionario público, por no haberse demostrado que se hubiera determinado por sentencia final, firme e inapelable que dicha actuación autorizada por ley es inválida; (3) que el injunction no es un remedio apropiado y adecuado; (4) que los demandantes no podían adquirir su título por prescripción, por tratarse de manglares que presentaban un exceso de cabida en la finca original; y (5) al declarar sin lugar la demanda.

Al igual que lo hizo en el tribunal a quo, en su alegato radicado en apelación la parte demandante pone gran énfasis en el alcance y efecto de nuestras opiniones en los casos de *Central Victoria* v. *Kramer*, supra. Al discutirlos insiste en que en ellos "se decidió terminantemente, y así lo sostiene toda la jurisprudencia, que un pleito dirigido contra un funcionario público por actos ilegales del funcionario llevados a cabo bajo el manto de su autoridad, no es un pleito contra el soberano." Veamos.

En el primero de esos casos la Central Victoria presentó ante la antigua Corte de Distrito de San Juan una petición de injunction en la que, luego de describir ciertos terrenos a ella pertenecientes y de los cuales estaba en posesión alegó que Kramer, sus agentes y empleados habían penetrado violentamente en los mismos, cortando montes y autorizando a otras personas a sacar leña de éstos, y que para dar color a los actos ejecutados, el demandado alegaba que dichos terrenos estaban bajo su custodia y administración como Jefe del Servicio Forestal de Puerto Rico. En contestación el

Procurador General radicó un documento titulado "Comparecencia Especial y Moción de Sobreseimiento", expresando que Kramer comparecía especialmente con el solo y único propósito de impugnar la jurisdicción de la corte sobre la persona del demandado y de suplicar que se desestimara la solicitud porque la demanda dirigida contra el Jefe del Servicio Forestal de Puerto Rico en su capacidad oficial, era en realidad una acción contra el Pueblo de Puerto Rico y éste no había dado su consentimiento para ser demandado. Luego de manifestar en el curso de su opinión que hay dos clases de decisiones, *una de las cuales sostiene en su esencia que "cuando un demandado está actuando realmente en su capacidad representativa como agente del gobierno, sus actos han de ser considerados como los actos del gobierno;"* y la otra que "cuando un agente actúa torticeramente él no puede defenderse escudándose en su supuesta autoridad oficial," este Tribunal manifestó: *"En el caso ante nos se admite necesariamente que la demandante es la dueña y poseedora de los terrenos descritos. Se alegan actos de usurpación por parte del demandado. También se admite que él reclama un derecho a los terrenos por virtud de su capacidad oficial. La mera reclamación del demandado en nada aminora la posesión admitida de la demandante."* (Bastardillas nuestras.) Siguió diciendo que la comparecencia del Procurador General tampoco la aminoraba; que su comparecencia era especial y *no alegaba ningún hecho en oposición a la posesión admitida;* que si los actos del demandado eran realmente torticeros, él no podía derivar ningún beneficio del hecho de que su abogado fuera el Fiscal General; que *éste cuidadosamente eludió hacer ninguna alegación para el Pueblo de Puerto Rico, excepto que el mismo no puede ser demandado a menos que preste su consentimiento;* que lo que la demanda imputaba eran hechos torticeros contra Kramer realizados en los terrenos de la demandante y el mencionarse su título oficial era únicamente una descripción de la persona; que se alegaba la posesión por parte de la demandante, y el caso caía dentro

de la serie de decisiones que no suministran ninguna protección a un agente por el hecho de que sea él un funcionario. Dijo además, que *el funcionario está protegido cuando consta debidamente que sus actos son consecuencia necesaria de sus deberes oficiales.* A virtud de todo lo anterior se revocó la sentencia apelada y se devolvió el caso para ulteriores procedimientos. Visto el mismo en sus méritos, el Tribunal de Distrito procedió a dictar sentencia en favor de la demandante. Apeló el demandado y emitimos la opinión que aparece en 45 D.P.R. 782. En ella se dice que al Pueblo de Puerto Rico, sucesor de la Corona de España en el dominio de las tierras públicas de Puerto Rico, no le era posible disputar la propiedad de la porción de terreno en cuestión en el pleito, y se confirma la sentencia apelada.

Como se ha visto en el primero de los casos citados el demandado Kramer impugnó la jurisdicción del tribunal para conocer del pleito seguido en su contra, toda vez que a su juicio se trataba de una demanda contra el soberano. Resolvimos que el escrito presentado admitía necesariamente que la Central era la poseedora de los terrenos que servían de objeto al litigio, mas hicimos constar de manera clara y enfática que *cuando un demandado actúa realmente en su capacidad representativa como agente del gobierno, sus actos han de ser considerados como los actos del gobierno.* A ese respecto véanse, además, *Fajardo Sugar Growers Ass'n* v. *Kramer,* 45 D.P.R. 348 y *Miguel* v. *Benedicto, Tesorero de P. R.,* 28 D.P.R. 753. En el primero de éstos dijimos a la página 358 que "Si bien en este caso se alegó que los demandados penetraron en las tierras en cuestión violentamente, alegación que los coloca en la línea de casos puramente personales, es lo cierto que *en la contestación se levantan hechos que de ser ciertos lo colocarían en la línea de casos en que las cortes se convencen de que no es la persona prevaliéndose de su cargo la que actúa invadiendo el derecho de los ciudadanos sino El Pueblo mismo el que interviene por medio de sus funcionarios y en el ejercicio de sus atribuciones y el*

*cumplimiento de sus deberes.*" (Bastardillas nuestras.) Y más tarde, haciendo referencia al caso de *United States* v. *Lee,* 106 U.S. 196, 27 L. ed. 171, nos expresamos así a la página 362:

". . . *cuando la defensa del funcionario revela que actúa dentro de sus legítimas facultades, resultando que es el Estado la verdadera y única parte interesada y que el derecho del Estado no es una mera pretensión si que tiene fundamento, entonces no hay invasión del derecho del ciudadano por parte del funcionario y la regla general debe aplicarse reconociéndose que el Estado no puede ser demandado sin su consentimiento, desestimándose la acción ejercitada después de haber penetrado en los méritos a los efectos de juzgar la conducta de los funcionarios.*" (Bastardillas nuestras.)

Ésa es precisamente la situación en el caso de autos.

El principio enunciado en *United States* v. *Lee,* supra, ha sido considerablemente limitado. En dicho caso el gobierno de los Estados Unidos siguió un procedimiento de apremio para cobrar contribuciones territoriales adeudadas. Vendida la propiedad en pública subasta—hoy en día la misma constituye en gran parte el Cementerio Nacional de Arlington—el gobierno de los Estados Unidos logró la adjudicación de ella. Años más tarde un causahabiente del dueño original de dichos terrenos inició un procedimiento para recobrar la posesión de los mismos. Se resolvió que como el derecho del demandante a los terrenos por él reclamados resultaba meridianamente claro, la acción era por ende, una contra los funcionarios que estaban en posesión y no contra el soberano.

Sin embargo, en extensa opinión emitida en el caso de *Larson* v. *Domestic & Foreign Corp.,* 337 U.S. 682, 93 L. ed. 1628, el propio Tribunal Supremo de la Nación manifestó:

"Dicho caso (*United States* v. *Lee*) representa más bien una aplicación específica de la excepción constitucional a la doctrina de inmunidad de que disfruta el soberano. Allí se trataba de un pleito incoado contra funcionarios federales para recobrar terrenos de que estaban en posesión, dentro del límite de su

autoridad, utilizados como destacamento militar y cementerio por los Estados Unidos. La cuestión en disputa lo fué la validez de una venta en cobro de contribuciones a virtud de la cual el gobierno de los Estados Unidos—ése era el criterio de los funcionarios—adquirió el título de la propiedad. El demandante alegó que la venta era nula y que la propiedad le pertenecía. Este Tribunal resolvió que si el demandante estaba en lo cierto la posesión de los demandados era ilegal y que el pleito iniciado contra ellos no era uno contra el soberano. . . Un examen del caso de *Lee* revela, no obstante, que *la decisión se basó en la supuesta ausencia de autoridad constitucional en los demandados para poseer los terrenos reclamados por el demandante* . . .

"El Tribunal asumió, pues, que si el título de los terrenos pertenecía al demandante la toma de los mismos por los demandados equivalía a una incautación de ellos sin la debida compensación y constituía, por tanto, una actuación inconstitucional. *En esa asunción, y solamente en esa asunción, la posesión que los demandados tenían de la propiedad constituía un uso inconstitucional de sus facultades y no estaba, por ende, autorizada válidamente por el soberano. Por tal motivo, un pleito en que se solicitaba un remedio específico para recobrar la propiedad, no era uno contra el soberano y podía ser proseguido contra los demandados en su carácter individual.*

"En su consecuencia, el caso de *Lee* no sostiene el criterio de que la alegación de que se es dueño de bienes de que un funcionario está en posesión basta para demostrar que el funcionario no ha sido autorizado válidamente para ello por el soberano. *Únicamente cuando existe la alegación de que la tenencia constituye una tenencia inconstitucional de la propiedad sin la debida compensación es que el caso de Lee requiere semejante conclusión.* Los casos que siguen al de Lee no exigen distinta conclusión. Existe gran número de ellos y este Tribunal mismo ha observado que no es 'empresa fácil armonizar todas nuestras decisiones en esta clase de casos'. *Sin embargo, posiblemente con una sola excepción, un remedio específico en relación con propiedad tomada o perjudicada por funcionarios del soberano que actúan a nombre de éste ha sido concedido únicamente cuando ha habido la alegación de que la toma de la propiedad o el perjuicio a la misma no ha sido la actuación del soberano, por resultar una u otro inconstitucional*

*o en exceso de las facultades estatutarias del funcionario. En verdad, este Tribunal ha dicho repetidamente que éstos son los casos en que procede tal remedio."* (Bastardillas nuestras.)

Véanse, además, *Fay* v. *Miller*, 183 F.2d 986 y *Kansas City Southern Ry. Co.* v. *Daniel*, 180 F.2d 910. Estamos enteramente de acuerdo con el criterio así enunciado.

En el caso que nos ocupa no sólo se alega en la contestación que la finca objeto de la acción consistía de manglares que son propiedad del Pueblo de Puerto Rico si que también con la copiosa prueba ofrecida se trató de demostrar que ésa era una realidad. Por otro lado, no hubo alegación alguna, como tampoco prueba al efecto, de que la actuación del Pueblo de Puerto Rico fuera inconstitucional o en exceso de las facultades estatutarias concedidas al Comisionado de lo Interior de Puerto Rico. Bajo esas circunstancias, forzoso es concluir que el aquí iniciado era más bien un pleito contra El Pueblo de Puerto Rico que contra Jorge J. Jiménez en su carácter particular.(³) No siendo El Pueblo parte en el litigio ni habiendo dado su consentimiento para ser demandado en pleitos de esta naturaleza, la acción claramente debía ser desestimada.

Habiendo llegado a la conclusión de que el presente es un pleito contra El Pueblo de Puerto Rico, es innecesario discutir el segundo de los errores señalados.

█ Conforme se ha visto, el demandado no solamente alegó que la finca objeto del recurso pertenecía a El Pueblo de Puerto Rico, sino que también ofreció prueba tendiente a demostrar que la misma estaba inscrita a favor de éste. Es principio por demás conocido en derecho que no procede un recurso de injunction cuando el título de la parte demandante

---

(³) En el escolio 1 hicimos constar que los apelantes solicitaron se hiciera figurar a Roberto Sánchez Vilella como demandado en substitución de Jorge J. Jiménez y que nosotros así lo decretamos. Esto equivalió a una admisión de que el pleito se dirigía no contra determinada persona en particular sino contra aquél que desempeñaba el cargo de Comisionado de lo Interior y que se trataba, por ende, de una demanda contra el soberano.

es dudoso. *Rivera* v. *Colón*, 62 D.P.R. 51; *A. Rojas & Co.* v. *Luna*, 39 D.P.R. 838; *Municipio de Comerío* v. *Rivera*, 34 D.P.R. 410; *Martínez et al.* v. *Soto*, 32 D.P.R. 607; *Sucesión Pérez* v. *Márquez*, 19 D.P.R. 726; *González* v. *Collazo*, 14 D.P.R. 855. Bajo las circunstancias enunciadas, no fué error de parte del tribunal sentenciador declarar que el injunction no era un remedio apropiado en este caso.

La apelación se da contra la sentencia y no contra los fundamentos de la misma. *Varela* v. *Fuentes*, 70 D.P.R. 879; *Rivera* v. *Hernández*, 70 D.P.R. 549. Así, pues, aun cuando dada la clase de recurso que tenía ante sí fué un error de parte del tribunal a quo decir en el curso de su opinión que los demandantes no podían adquirir su título por prescripción, sin embargo, ese error no es uno que debe dar lugar a la revocación de la sentencia.

Tomando lo antes dicho en consideración el tribunal sentenciador tampoco erró al declarar sin lugar la demanda.

Si a estas alturas los demandantes pueden proseguir con éxito contra el Pueblo de Puerto Rico una acción reivindicatoria, una acción sobre sentencia declaratoria o un procedimiento para cancelar la inscripción que a virtud del expediente de dominio obtuvo el Pueblo de Puerto Rico es algo que no está ahora. ante nos y que, por ende, no nos concierne.

*Dadas las consideraciones anteriores, se dejarán sin efecto nuestra opinión y sentencia de 15 de septiembre de 1952 y en su lugar se dictará nueva sentencia confirmando la apelada.*

El Juez Asociado Sr. Negrón Fernández no intervino.