EMILIO DÁVILA DÍAZ, demandante, apelado y apelante, *v.* AUTORIDAD DE TIERRAS DE PUERTO RICO, demandada, apelante y apelada.

Número 11329.

*Sometido:* 1 de noviembre de 1955.  *Resuelto:* 21 de diciembre de 1955.

860

Antonio Riera, Aureliano Rivas Rosario, Ramón Gandía Biscombe, Alberto Ferrer y Félix Bello, abogados de la apelante-apelada; Ángel Manual Ciordia, abogado del apelado-apelante.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Emilio Dávila Díaz presentó contra la Autoridad de Tierras de Puerto Rico[1] una acción civil en reclamación de daños y perjuicios. La demanda instada al efecto se basó esencialmente en que siendo el demandante arrendatario de la Autoridad ésta le había echado de la finca arrendada 28 cabezas de ganado de su pertenencia que en ella pastaban. Contestó la Autoridad específicamente y, luego de una conferencia anterior al mismo, fué el pleito a juicio. Las partes adujeron prueba testifical y documental, dictando el tribunal a quo sentencia a favor del demandante, basándose para ello en una corta opinión que textualmente copiada reza así:

"Éste es un caso sin gran importancia. Sin embargo, mirando el volumen de papel utilizado por las partes en sus múltiples alegaciones, cualquiera podría imaginarse que el litigio versa sobre la reivindicación del Canal de Panamá o sobre la

[1] En lo sucesivo nos referiremos a la Autoridad de Tierras de Puerto Rico simplemente como la "Autoridad."

posesión de la Bomba Atómica. Se reduce todo el litigio a peticionar el demandante que la parte demandada sea condenada en daños y perjuicios ya que de un pequeño predio de terreno propiedad de la demandada fué echado un número de cabezas de ganado vacuno que en el mismo pastoreaba el demandante. Se alega que el demandante pagaba cierta cantidad de dinero a la demandada por utilizar ese pequeño predio de terreno.

La prueba lleva al tribunal a la conclusión de hecho de que la demandada adquirió varias fincas en el pueblo de Vega Alta y entre tales fincas, un pequeño predio de terreno que tenía arrendado el demandante al dueño anterior de las fincas. El demandante utilizaba ese terreno para la crianza de ganado vacuno. La parte demandada le notificó al demandante que no deseaba que el demandante continuara en el uso del mencionado predio de terreno. Las partes llegaron a un acuerdo a virtud de cierto procedimiento independiente del presente y la demandada vendió al demandante unos terrenos en donde tenía ubicadas unas casas y el demandante convino en entregar el resto del terreno a la parte demandada. Sin embargo, continuó utilizando ese pequeño predio de terreno con su ganado y habiendo vendido este terreno la parte demandada a una tercera persona, procedió a sacar de dicho terreno el ganado del demandante. A pesar de haber terminado el contrato de arrendamiento entre las partes el demandante continuó utilizando el terreno por algún tiempo y pagando por el uso del mismo a la parte demandada. Entiende el Tribunal que la parte demandada no debió echar del terreno aludido el ganado propiedad del demandante sin recurrir a un debido proceso de ley. La parte demandada entiende que hizo tal cosa porque fué convenio entre las partes ya realizado y había terminado el contrato de arrendamiento. El Tribunal entiende que la parte demandada procedió un poco a la ligera, aunque sin mala fe de especie alguna. Ante esta situación la parte demandante cree que la parte demandada le ha causado enormes daños y perjuicios pero el Tribunal entiende que tales daños y perjuicios fueron muy escasos y de muy poca monta y que reducidos a dinero, éstos caben en una pequeña taza de té.

"Se condena a la parte demandada a pagar al demandante en concepto de daños y perjuicios totales la suma de ciento setenta y cinco dólares ($175) con las costas a cargo de la demandada, sin incluir honorarios de abogado."

De la anterior sentencia ambas partes apelaron. Discutiremos primeramente los errores señalados por la demandada. Éstos son al efecto de que el tribunal a quo erró (1) al no declarar con lugar la moción de la demandada solicitando sentencia sumaria a su favor a base de las admisiones del demandante; y (2) al no darle la debida eficacia legal a la prueba admitida y sometida a su apreciación. Tales errores no han sido cometidos.

■■ Conforme ya hemos indicado, a la demanda presentada la Autoridad contestó específicamente. En la conferencia con antelación al juicio el demandante aceptó 14 de los 16 párrafos de la contestación. No lo hizo así en cuanto a los párrafos 8 y 16 de la misma, los cuales negó. En innumerables casos hemos resuelto que para que proceda una moción de sentencia sumaria es preciso que no exista ninguna genuina controversia de hechos. *Despiáu* v. *Pérez*, 76 D.P.R. 123; *Sánchez* v. *De Choudens*, 76 D.P.R. 1; *Santiago* v. *Tribl. Superior*, 75 D.P.R. 225; *Escalera* v. *Armenteros*, 74 D.P.R. 11; *Hernández* v. *Caraballo*, 72 D.P.R. 673; *Commercial Casualty Ins.* v. *Corte*, 71 D.P.R. 899; *Sucn. Guerra* v. *Sánchez*, 71 D.P.R. 807; *Fernández* v. *Corte*, 71 D.P.R. 161; *Gaztambide* v. *Sucn. Ortiz*, 70 D.P.R. 412; *Hettinger & Co.* v. *Tribunal de Distrito*, 69 D.P.R. 137; *Ramos* v. *Pueblo*, 67 D.P.R. 640. Al no aceptarse por el demandante esos dos párrafos de la contestación y al existir, por ende, controversia sobre ciertas alegaciones de la demanda, ante el tribunal a quo existía indiscutiblemente una genuina controversia de hechos a ser dirimida. Siendo ello así, el tribunal a quo no erró al desestimar dicha moción.

■ Es incuestionable que una cosa es la apreciación de la prueba y otra cosa la efectividad o alcance legal que el tribunal debe dar a la misma. *Mercedes Bus Line* v. *Tribl. de Distrito*, 70 D.P.R. 690; *Rodríguez* v. *Pagán*, 67 D.P.R. 345, 348. La prueba en este caso fué contradictoria, pero el tribunal a quo dirimió el conflicto y en ello no hallamos que

cometiera error.  Creída la prueba del demandante procedía dictar sentencia a su favor.

■ Los primeros cuatro de los seis errores señalados por el demandante son en el sentido de que el tribunal sentenciador erró (1) "al concluir que había terminado el contrato de arrendamiento entre las partes y el demandante continuó utilizando el terreno por algún tiempo y pagando por el uso del mismo a la parte demandada"; (2) "al concluir que las partes habían llegado a un acuerdo a virtud de cierto procedimiento independiente del presente por el que el demandante convino en entregar el resto del terreno a la parte demandada"; (3) "al concluir que la Autoridad de Tierras actuó sin mala fe de especie alguna al echar fuera de las fincas el ganado del Sr. Dávila Díaz"; y (4) "al concluir que los daños y perjuicios causádosle al demandante por la demandada fueron muy escasos y de muy poca monta y que reducidos a dinero éstos caben en una pequeña taza de té." Los anteriores errores se dirigen al razonamiento utilizado por el tribunal a quo en su opinión para llegar a la conclusión que llegó. A este respecto bastará decir que son innumerables los casos en que este Tribunal ha dicho que la apelación se da contra la sentencia y no contra los razonamientos o fundamentos de la opinión. *Lluberas* v. *Mario Mercado e Hijos*, 75 D.P.R. 7; *Silva* v. *Doe*, 75 D.P.R. 209; *Hernández* v. *Caraballo*, 74 D.P.R. 29; *Armstrong* v. *Sánchez Vilella*, 74 D.P.R. 171.

■ Los errores quinto y sexto señalados por el demandante son en el sentido de que el tribunal inferior erró (5) "al concederle al demandante en concepto de los daños y perjuicios totales la suma de ciento setenta y cinco dólares ($175)"; y (6) "al no conceder daños punitivos."

Surge de los autos que el demandante, en calidad de arrendatario del dueño anterior, estaba en posesión de dos pequeñas parcelas de terreno que formaban partes integrantes de dos fincas mayores que dicha arrendadora—Finlay Brothers & Waymouth Trading Co.—vendió a la Autoridad por escri-

tura pública otorgada el 6 de mayo de 1946; que esas pequeñas fincas las tenía el demandante en arrendamiento desde el año 1942, a virtud de un contrato extrajudicial, por un canon anual de $48, pagadero por anticipado; que el término original del arrendamiento fué el de ,un año, que luego se prorrogó verbalmente a tres años más que vencerían el 30 de junio de 1946; que adquirida en 6 de mayo de 1946 la propiedad por la Autoridad, en 12 de agosto siguiente ésta dirigió al demandante una carta informándole haber comprado las fincas de que el demandante estaba en posesión e indicándole que debía desalojarlas dentro del término de diez días; que no obstante ello, la Autoridad continuó percibiendo del demandante la suma de $48 anuales; ([2]) que el demandante construyó ciertas edificaciones en una de las dos fincas de que estaba en posesión, o sea en la de 11.50 cuerdas—la cual al ser medida posteriormente sólo resultó tener 10.3229 cuerdas—y que con tal motivo el demandante estaba interesado en su compra, la que no pudo efectuarse porque la Junta de Planificación de Puerto Rico no dió su autorización a ello "por estar localizada a poco más de un kilómetro de la zona urbana de Vega Alta, la finca cuya venta se propone podría ser de utilidad para el futuro desarrollo de proyectos industriales"; que más tarde dicha Junta autorizó la venta al demandante de una parcela de 1.46 cuerdas de la misma finca, donde estaban enclavadas dichas edificaciones, permaneciendo el demandante, no obstante, en posesión del remanente de las 10.3229 cuerdas; que con anterioridad a esa venta, la Autoridad inició un pleito de sentencia declaratoria contra el aquí demandante con el propósito de que se determinara el concepto en que éste estaba en posesión, pero que al efectuarse la referida venta al demandante el pleito fué archivado por falta de instancia; y que estando en posesión el demandante del remanente de la finca, un empleado de la Autoridad, en presen-

---

([2]) Repetimos que es innecesario determinar si la posesión del demandante lo era como arrendatario o como usuario. *Cf. Harris* v. *Keehn,* 184 Pac. 527.

cia del hijo de aquél, sacó de dicha parcela cuantas cabezas de ganado el demandante allí tenía. También aparece de los autos que el demandante pagó a la Autoridad con motivo de la posesión que disfrutaba de las dos pequeñas fincas, las siguientes cantidades: $96 en 17 de junio de 1947; $48 en 20 de julio de 1948; $48 en 14 de septiembre de 1949; $48 en 19 de julio de 1950; y $48 el 30 de julio de 1951.(3) Ésa fué esencialmente la situación que el tribunal tuvo ante sí al fallar el caso.

Si el demandante estaba en posesión legal de la finca, ya fuere como arrendatario o como usuario de la misma,(4) la Autoridad no tenía derecho a tomarse la ley en sus propias manos. Al hacerlo, es decir, al poner fuera de la finca de que el demandante estaba en posesión las cabezas de ganado a éste pertenecientes, ella incurrió en responsabilidad.

En la súplica de la demanda el demandante solicita se condene a la demandada a pagar la suma de $53,053.66, más las costas y $5,000 para honorarios de abogado. El tribunal a quo, como se ha visto, solamente le concedió $175 y las costas. Nos dice el demandante que de acuerdo con las alegaciones de su demanda y la prueba que desfiló durante el juicio, él reclama la suma indicada por la pérdida en la venta de ganado; las cercas que había puesto en la finca y el talado que en ésta se había hecho; el término del arrendamiento que aún estaba en descubierto; lo pagado por recoger

---

(3) Como presumimos que a la anterior dueña—arrendadora—se le pagó la renta hasta el 30 de junio de 1946, colegimos que el demandante pagó a la Autoridad, como renta o por el uso—según fuere el caso—hasta el 30 de junio de 1952.

Las cabezas de ganado fueron lanzadas de la finca en octubre 9 de 1951.

(4) Véanse *Abarca Sanfeliz* v. *Bank of Nova Scotia*, 46 D.P.R. 947; *López* v. *Tribunal de Distrito*, 67 D.P.R. 176; *Ball* v. *Vilá*, 67 D.P.R. 415; *De la Cruz* v. *Gobierno de la Capital*, 68 D.P.R. 534; *Vidal* v. *Corte*, 71 D.P.R. 582; *Autoridad Sobre Hogares* v. *Sagastivelza*, 72 D.P.R. 276; *Pueblo* v. *Soc. Agríc. Mario Mercado e Hijos*, 72 D.P.R. 792; *Torres* v. *Biaggi*, 72 D.P.R. 869; *Asoc. Cooperativa* v. *Navarro*, 73 D.P.R. 145; *Roselló Hnos.* v. *Figueroa*, 74 D.P.R. 432 y *Vélez* v. *San Miguel*, 68 D.P.R. 575.

las cabezas de ganado que se extraviaron al ser echadas de la finca; las ganancias dejadas de percibir y el *good will* del negocio de carne que tenía establecido en Vega Alta. No sabemos específicamente por cuál, o por cuáles, de los anteriores conceptos concedió el tribunal a quo la indicada suma.

Si bien la prueba del demandante tendió a demostrar que en la finca en cuestión, al momento del desalojo, había 28 cabezas de ganado, sin embargo, el propio demandante—quien nos dice que las mismas valían más de $4,500—nos indica (Tr. Ev., pág. 21) que su empleado le dijo "que le había vendido *cinco vacas* a Pedro Rodríguez que le produjeron como $2,100." (Bastardillas nuestras.) Pedro Rodríguez declaró, no obstante, que le compró cinco vacas al demandante por $500. En primer lugar no sabemos si uno y otro testigo se estaban refiriendo a las mismas cinco vacas, y en segundo lugar la prueba no nos dice en cuánto se vendió el resto de las cabezas de ganado. No es posible, por tanto, determinar cuál fué la pérdida sufrida en la venta de éstas, si es que la hubo. Sobre las cercas puestas por el demandante en la finca y el talado de éstas, él no tenía derecho a recibir compensación alguna, ya que según los términos expresos del contrato de arrendamiento originalmente celebrado, cualesquiera mejoras efectuadas por el arrendatario en las fincas arrendadas, quedaban a favor del dueño de las mismas al ponerse fin al contrato. Por recoger doce cabezas de ganado que se extraviaron, la prueba del demandante tendió a demostrar que se pagaron por él $60. Por tanto, es lógico inferir que en los $175 concedidos en concepto de daños y perjuicios están incluídos los $60 pagados por este concepto. También se puede inferir que en la suma concedida está incluída cierta cantidad por la ganancia dejada de percibir en la venta de la carne, de ser sacrificadas las reses, al igual que por el *good will* del negocio, en caso de proceder compensación por este último concepto. En acciones de daños y perjuicios, la fijación de la cuantía de la indemnización es cuestión que descansa en la sana discreción del tribunal sentenciador. *Graniela* v. *Yo-*

*lande,* 65 D.P.R. 107; *Lloréns* v. *Lozada,* 73 D.P.R. 271. Considerada la prueba que en este caso tuvo ante sí el tribunal a quo, nuestro criterio es que no puede decirse que abusara de esa discreción al conceder al demandante tan sólo $175 por tal concepto. Tampoco creemos que dicho tribunal erró al no resolver que la demandada fué temeraria y al no condenarla, por ende, al pago de honorarios de abogado.

La cuestión suscitada por el sexto señalamiento fué oportunamente planteada en el tribunal a quo. Procederemos a discutirla. De acuerdo con el art. 281 del Código de Enjuiciamiento Civil—32 L.P.R.A. sección 2765—"si una persona reclamare daños y perjuicios por razón de ocupación violenta o de usurpación de algún edificio o de cualquier predio cultivado, *podrá* obtener una sentencia por el triple del importe de los daños verdaderos que aquélla determine." (Bastardillas nuestras.) Como se ha visto, el texto castellano usa la palabra "podrá". El texto inglés, idioma en que originalmente fué redactado ese estatuto, (art. 735 del Código de Enjuiciamiento Civil de California) (5) usa la palabra *may.* Al resolver un caso en que fué menester interpretar el alcance del art. 733 de California, equivalente al 279 del Código de Enjuiciamiento Civil de Puerto Rico, que también usa la palabra *may,* la Corte de Apelaciones del referido estado de California se expresó así en el caso de *Swall* v. *Anderson,* 140 P.2d 196, 200:

"Pero aun admitiendo que al artículo deba dársele la interpretación liberal alegada por el apelante, todavía tenemos que hacer frente a la cuestión de si las disposiciones del mismo son imperativas en tal forma que la corte deba conceder triples

(5) El art. 13 del Código Civil—31 L.P.R.A. sec. 13—dispone:

"En caso de existir discrepancia entre los textos inglés y castellano de un estatuto de la Asamblea Legislativa de Puerto Rico, prevalecerá en la interpretación del mismo el texto en que se hubiere originado en cualquiera de las Cámaras, salvo en los casos siguientes: (*a*) si el estatuto fuere una traducción o adaptación de un estatuto de los Estados Unidos o de algún Estado o Territorio de los Estados Unidos, se dará preferencia al texto inglés sobre el texto castellano; (*b*) si el estatuto fuere de origen español se atenderá al texto castellano con preferencia al texto inglés; (*c*) si la cuestión de preferencia no pudiera resolverse por las reglas precedentes, se atenderá al texto castellano."

daños en todo caso en que se ha ocasionado daño deliberado a árboles. El artículo 733 del Código de Enjuiciamiento Civil figura en el capítulo 2, que se intitula 'de las acciones por perturbación, menoscabo y voluntaria violación del derecho de propiedad en determinados casos.' Varios artículos de ese capítulo de manera clara hacen que sea discrecional para el tribunal sentenciador conceder o no triples daños. El artículo 732 relativo a menoscabo, y el artículo 735 (artículo 281 de nuestro Código de Enjuiciamiento Civil) relativo a la voluntaria violación del derecho de propiedad ajena, fueron redactados al mismo tiempo que el artículo 733 y no se nos ha aducido razón alguna para que lleguemos a una interpretación distinta . . . La palabra 'may' (*podrá*) según la misma se usa en los estatutos generales y conforme a la interpretación dádale por los tribunales, es directiva y no imperativa."

En sentido similar se expresa el Tribunal Supremo del estado de Nevada en el caso de *Glock* v. *Elges*, 159 Pac. 629, 631, al interpretar el art. 5508 de sus estatutos revisados, que se lee enteramente igual a como reza el art. 281 del Código de Enjuiciamiento Civil nuestro. Véanse también *Mayor* v. *Board of Land Com'rs*, 192 P.2d 403; *San Francisco, etc.* v. *Leonard*, 119 Pac. 405, 412.([6]) Por tanto, no se cometió error alguno por el tribunal a quo al no conceder triples daños.

*No habiéndose cometido ninguno de los errores señalados por las partes, la sentencia apelada debe ser confirmada.*

---

([6]) En *Tewksbury* v. *O'Connell*, 25 Cal. 262, el Tribunal Supremo de California llegó a una conclusión contraria a la que aquí llegamos, pero en ese caso estaba envuelta la interpretación de una ley de 1861 que por su contexto hacía imperativa la concesión de triples daños.