BLANCA R. SANTIAGO, peticionaria, *v.* EL TRIBUNAL DE PRI-
MERA INSTANCIA DE PUERTO RICO, TRIBUNAL SUPERIOR,,
SALA DE SAN JUAN, HON. JESÚS A. GONZÁLEZ, JUEZ,,
demandado; RAQUEL R. DEXTER, interventora.

Número 1991.

*Sometido:* 27 de mayo de 1953. *Resuelto:* 22 de julio de 1953.

*Heriberto Torres Solá,* abogado de la peticionaria; *F. Fernández
Cuyar,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tri-
bunal.

Blanca R. de Santiago alegó en una demanda enmendada
presentada en la sección de San Juan del anterior Tribunal
de Distrito que ella es "uno de los únicos universales herede-

ros" de León Ramos Buist, quien falleció en el mes de septiembre de 1930; que el 26 de agosto de 1930 él "simuló vender" a la co-demandada Luz M. R. de Duncan, una de sus hijas, una finca urbana, en virtud de una escritura de tal fecha, y que en esa misma fecha la finca se encontraba sujeta a una hipoteca constituída a favor de la otra co-demandada Raquel R. Dexter, hija también de Ramos Buist, envolviendo la hipoteca la suma principal de $3,000 con intereses al 10 por ciento anual; que el 12 de noviembre de 1936, la demandada Raquel R. Dexter adquirió "un supuesto título de compraventa de la otra demandada, Luz M. R. de Duncan sobre la finca urbana descrita en el párrafo segundo anterior, constándole personalmente a la co-demandada Raquel R. Dexter en el acto del otorgamiento de dicha escritura, y desde muchos años antes, que la propiedad que suponía adquirir pertenecía a los mencionados herederos de don León Ramos Buist; constándole igualmente, que el traspaso que el señor Ramos Buist simuló a favor de doña Luz M. R. de Duncan lo hizo con conocimiento de los hijos del primero que eran mayores de edad, y encontrándose en mal estado de salud, para proteger a sus hijos de su patrimonio con motivo de la inminencia de un pleito que se inició poco después y que terminó por una transacción después de largas contenciones e incidentes; y constándole a la demandada de apellido Dexter que la otra demandada de apellido Duncan no pagó al supuesto vendedor Sr. Ramos Buist cantidad, cosa o consideración alguna como precio de la supuesta compraventa."

La demanda enmendada contiene otras dos causas de acción en cuanto a daños y perjuicios y frutos.

La demandada Luz M. R. de Duncan compareció por escrito y no negó los hechos alegados en la demanda, allanándose a que se dictase sentencia en su contra, exponiendo además que ella conoce los hechos alegados en la demanda y que en el momento en que ella había transferido la finca a Raquel R. de Dexter el 12 de noviembre de 1936 "la demandada Dexter tenía conocimiento de que el título a favor de la

compareciente era inexistente y que la finca en cuestión pertenecía a toda la Sucesión del causante Don León Ramos Buist."

Antes de radicar contestación alguna, la co-demandada Raquel R. Dexter presentó una solicitud de sentencia sumaria, alegando que no había controversia real en cuanto a los hechos materiales, y acompañando a la moción copias certificadas de las escrituras otorgadas el 26 de agosto de 1930 y el 12 de noviembre de 1936, cuyas escrituras habían sido mencionadas e impugnadas en la demanda enmendada. En la primera escritura mencionada, de 26 de agosto de 1930, se indica que Ramos Buist le vende la finca a Luz María Ramos; que sobre la finca pesa una hipoteca de tres mil dólares constituída a favor de Raquel Ramos viuda de Dexter mediante escritura otorgada el día once de octubre de 1929, y que constituye el precio de la venta a favor de Luz María Ramos "la suma ajustada convenida de cinco mil dólares, que los comparecientes manifiestan ser el justo y verdadero valor del inmueble aquí vendido, de cuya cantidad la compradora rebaja los tres mil dólares importe de la hipoteca que grava la finca, según arriba se ha referido; y en cuanto a los dos mil dólares restantes, el vendedor don León Ramos confiesa haberlos recibido de manos de la compradora con anterioridad a este acto, en billetes de Banco de los Estados Unidos, de curso legal; advirtiéndoles yo el notario que confesado como queda el pago del precio de esta venta, contra dicha confesión no cabrá recurso alguno aunque en lo sucesivo se probara no ser cierta la entrega del dinero en todo o en parte."

En la segunda escritura mencionada, de 12 de noviembre de 1936, Luz María Ramos le vende la misma finca a Raquel Ramos viuda de Dexter, verificándose la compraventa "por el precio cierto de cinco mil setecientos cincuenta dólares, de los cuales retiene Doña Raquel Ramos Vda. de Dexter la suma de cuatro mil quinientos dólares en pago del crédito antes dicho (n. b., la hipoteca ya mencionada) y los intereses vencidos hasta la fecha. Los restantes mil doscientos

cincuenta dólares, los entrega en moneda de los Estados Unidos de América en mi presencia y la de los testigos instrumentales. Doña Luz María Ramos le da la más formal carta de pago a doña Raquel Ramos."

El tribunal a quo declaró con lugar la moción de la promovente Raquel R. Dexter y dictó la sentencia sumaria solicitada. La demandante Blanca R. Santiago ha impugnado esa actuación en este recurso de *certiorari*.

El tribunal sentenciador basó su dictamen, esencialmente, en la tesis al efecto de que de las dos escrituras presentadas surge que hubo una causa suficiente para las enajenaciones, especialmente demostrándose que en la escritura de venta de Ramos Buist a Luz María Ramos, esta última asumió el pago de la hipoteca que pesaba sobre la finca, constituyendo ello suficiente causa de acuerdo con lo resuelto en *Pol* v. *Suau*, 48 D.P.R. 176, no existiendo, por lo tanto, según el tribunal sentenciador, controversia genuina alguna sobre los hechos.

En cuanto a los hechos de este caso, debemos observar, en primer termino, que en la demanda enmendada se impugna precisamente la validez de las escrituras que fueron presentadas por la promovente para derrotar la propia demanda enmendada. Esencialmente, en la demanda enmendada se reconoce la existencia en sí de las escrituras y se reconoce que en las escrituras se exponen ciertos hechos en cuanto a la causa o consideración de las enajenaciones, pero se alega que tal causa es falsa, simulada o inexistente y que la verdadera causa o motivo fué el propósito de Ramos Buist de librar la propiedad de las consecuencias de un litigio. Tales alegaciones no quedan destruídas meramente por la presentación de las escrituras en sí, cuya existencia, de todos modos, se reconoce en la demanda enmendada. La controversia planteada por la demanda enmendada no se refiere a la suficiencia jurídica de la causa señalada en las escrituras, sino que se refiere a la veracidad y certeza de las manifestaciones contenidas en la escritura en cuanto a

la causa. Las alegaciones de la parte demandante van más allá de lo expuesto en las escrituras y significan, en términos concretos, que lo que se dice en las escrituras no es cierto. Esas alegaciones no quedan derrotadas con la presentación de las propias manifestaciones cuya certeza se impugna. Una alegación de que una causa es aparente y no real no queda destruída por la exposición de la causa aparente. La demanda enmendada tiene un alcance dual. Envuelve una alegación de que no hubo causa en absoluto y además envuelve la alegación de que la causa, de haberla, fué simulada, implicando la alegación de simulación la tesis de que la transacción tuvo una causa o motivo distinto que podría implicar la nulidad de la transacción. Antonio M. Borrell y Soler, "Nulidad de los Actos Jurídicos según el Código Civil Español", pág. 69, 72, 74, 77, 78, 81. En la pág. 85 de la obra citada de Borrell y Soler se dice lo siguiente:

"Así el D. R. como la jurisprudencia española reconocen la validez de estos contratos. Por ejemplo, para evitar el mal efecto que podría producir en algunos individuos de la familia, el tener noticia de donaciones hechas por el que se espera heredar, a veces se disfrazan en forma de contrato oneroso; pero vale la donación si no tiene carácter de inmoral o ilegal, y no tiene incapacidad el donador para hacerla ni el donatario para recibirla. En este caso el contrato no se llama *simulado,* sino disimulado, como lo hace la sentencia citada de 23 de diciembre de 1935 y otra de 3 de marzo de 1932, la cual dice que 'si bien al amparo del artículo 1.276 del C. c. pueden admitirse negocios *disimulados* o sea los actos jurídicos válidos y lícitos encubiertos por contratos aparentes, pero privados de la causa específica que va unida a su existencia, es necesario para que aquéllos produzcan plenos efectos, que se justifique no sólo la concurrencia de los indispensables elementos personales de capacidad y conocimiento, así como la existencia del objeto en que han de apoyarse las relaciones obligatorias o reales ciertamente concertadas, sino también la causa verdadera y lícita en que se funda el acto que las partes han querido ocultar y el cumplimiento de las formalidades que la ley exigiría en quienes actuaran paladinamente'. Luego expresa la sentencia los requisitos necesarios para la validez de una donación entre vivos

que no concurrieron en el caso fallado por no cumplir los requisitos del artículo 633 del C. c.   Recordemos la S. de 23 de diciembre de 1935."

En la escritura impugnada de 26 de agosto de 1930 se hace constar que constituye el precio de la  venta la suma de cinco mil dólares, de cuya cantidad el vendedor indica que previamente había recibido dos mil dólares, quedando rebajados los otros tres mil dólares, importe de la hipoteca previa ya mencionada, equivaliendo esto último a la obligación de la supuesta compradora de asumir el pago de la hipoteca. En la demanda enmendada se alega que esa venta es simulada;  que tal traspaso se verificó con el propósito de librar a la propiedad de los posibles efectos de un pleito inminente, y que la supuesta compradora no pagó cantidad, cosa o consideración alguna como precio de la supuesta compraventa. Ello envuelve una alegación de que es falso lo expuesto en la escritura en cuanto a que Ramos Buist había recibido previamente dos mil dólares de la alegada compradora, dando lugar ello a una cuestión de hecho que no ha dejado de existir con la presentación de la escritura en sí.   En cuanto a los restantes tres mil dólares, es cierto que el asumir el pago de una hipoteca puede constituir una causa legalmente suficiente. *Pol* v. *Suau*, supra.   Pero ya hemos visto que en la demanda no se impugna la suficiencia legal de lo que se hace constar como causa.   Lo que se impugna es la veracidad y certeza de la constancia, o sea, que no es cierto que la supuesta compradora hubiese asumido esa hipoteca, o que quedasen tres mil dólares restantes ya que no hubo precio alguno de venta, o sea, que fué otra la realidad de la transacción y fué otro el propósito, motivo e intención de las partes.   La realidad de la transacción, y si la causa expuesta fué real o aparente, conllevan cuestiones de hecho en controversia, no quedando eliminada la controversia con prueba de las constancias en las escrituras, ya que precisamente son esas constancias las que se impugnan.

Actuó erróneamente el tribunal a quo al dictar la sentencia sumaria, y ella debe ser anulada. Debemos aclarar que no estamos anticipando juicio alguno sobre los méritos intrínsecos de este caso, ni sobre las cuestiones de hecho en él envueltas. Nos limitamos a resolver que de los autos surge una controversia genuina sobre los hechos que impide una sentencia sumaria, controversia que no ha sido eliminada meramente por la presentación de unas escrituras cuya propia veracidad se impugna en este caso.

*Deben anularse la resolución y la sentencia recurridas, y debe devolverse el caso al tribunal a quo para que se sigan los procedimientos posteriores que no sean incompatibles con esta opinión.*

El Juez Asociado Sr. Belaval no intervino.